L. C. FREEMAN, *Appellant,* vs. LEM SIMMONS, et al.,
*Appellees.*

145 So. 187.

Opinion filed December 21, 1932.

Petition for rehearing denied February 3, 1933.

*Martin, Martin & Stavley,* for Appellant;

*Charles F. Blake* and *Sutton, Tillman & Reeves,* for Appellees.

WHITFIELD, J.—The appeal herein is from a decree dismissing a bill of complaint seeking to have officers enjoined from enforcing the provisions of Chapter 15245, Local and Special Acts of 1931.

As Chapter 15245, Acts of 1931, is a local or special law, the validity of its enactment under the constitution depends upon a notice stating "the substance of the contemplated law," duly published "in the locality where the matter or thing to be affected may be situated." The validity of such enactment also depends upon the sufficiency of the title of the bill as it was passed by each House, as shown by the legislative journals. Should the title of the Act signed by the legislative officers and as presented to and approved by the Governor, be materially different from the legislative journal entries of the title of the bill as it was introduced into the legislature and as it was passed by each House, the title as shown by the legislative journal entries, will control.

State ex rel. Attorney General vs. Green, 36 Fla. 154, 18 So. 334; Gwynn v. Hardee, 92 Fla. 543, 110 So. 343; Wade v. Atlantic Lumber Co., 51 Fla. 628, 41 So. 72; Volusia County v. State, 98 Fla. 1166, 125 So. 375.

The legislative journals show that the title of House Bill No. 971, as it was introduced into the House, as it was passed by the House, as it was transmitted to the Senate, as it was passed by the Senate, as it was returned to the House, and as it was referred to the Committee on Enrolled Bills, was as follows:

"A bill to be entitled An Act prohibiting the owner or person having the custody and control of cattle, hogs, horses, mules, goats, sheep or other live stock from permitting the running at large of such cattle, hogs, horses, mules, goats, sheep, or other live stock within the following described boundaries of Hillsborough County, Florida, and to provide for the sale of such cattle, hogs, horses, mules, goats, sheep and other live stock which may be found running at large in said territory."

The legislative journals also show that the title to House Bill No. 971, as it was reported to the House by the Joint Committee on Enrolled Bills, and as it was signed by the Speaker of the House and by the Clerk of the House; as it was reported to the Senate by the Joint Committee on Enrolled Bills, and as it was signed by the President of the Senate and the Secretary of the Senate, and as it was transmitted to the Governor, was:

"An Act Prohibiting the Owner or Person having the Custody and Control of Cattle, Hogs, Horses, Mules, Goats, Sheep, or Other Live Stock from Permitting the Running at Large of Such Cattle, Hogs, Horses, Mules, Goats, Sheep or Other Live Stock Within the Following Described Boundaries in Hillsborough County, Florida, to-wit: Beginning at the Northeast Corner of Hillsborough County, Which is the Northeast Corner of Section 1, Township 27 South, Range 22 East, and Run Thence South Along the Hillsborough Polk County Line to the Southeast Corner of Section 36, Township 29 South, Range 22 East; Thence West Approximately 3500 Feet to the Center Line of the Alafia River (Sometimes Know as Howell's Creek), as Shown in U. S. Department of Agriculture Bureau of Soils Map of Hillsborough County, Florida, Published in 1916; Thence Westerly

Along the Center Line of the Said Alafia River to Hillsborough Bay; Thence Northwesterly along the Shore Line of Hillsborough Bay and Old Tampa Bay to the Range Line Dividing Ranges 16 and 17 East, Which Is Also the West Boundary of Hillsborough County; Thence North to the Northwest Corner of Hillsborough County; Thence East Along County Line to the Northeast Corner of Hillsborough County, which is the Point of Beginning, and to Provide, for the Enforcement of This Act by the Impounding and Sale of Such Cattle, Hogs, Horses, Mules, Goats, Sheep or Other Live Stock Which May be Found Running at Large in Said Territory.''

The House Journal shows that the Governor notified the House that he had ''approved the following Acts which originated in'' the House, ''and have caused the same to be filed in the office of the Secretary of State * * * (House Bill No. 971): Relating to Hillsborough County.''

House Bill No. 971 appears as Chapter 15245 in the Local and Special Laws of 1931, printed by authority of law, the title as so printed being as such title is last above quoted.

It thus appears that as shown by the legislative journals, the title of House Bill No. 971, now Chapter 15245, Acts of 1931, as it was signed by the legislative officers, and as presented to the Governor, and as printed in the official publication of the session laws, gives a description of the territory referred to in the title of the bill as being ''within the following boundaries in Hillsborough County,'' while the quotations from the legislative journals of each House, show that the title to the bill introduced into the House as House Bill No. 971, and as it passed each House of the legislature, did not contain a description of the territory within Hillsborough County, Florida, in which the Act was designed to operate.

The title to the bill as it was introduced in the House, and as it was passed by the House and by the Senate as

shown by the journals, is manifestly incomplete in that it purports to be the title of an Act providing regulations to be operative "within the following described boundaries of Hillsborough County, Florida," and the title of the bill as shown by the legislative journal entries, does not contain any descriptions or boundaries whatever. The constitution requires notice of the proposed local or special bill to be "published in the locality where the matter or thing to be affected may be situated," Section 21, Article III; and of course the title of the bill must be sufficient to give notice to interested parties "in the locality where the matter or thing to be affected may be situated." When no locality is described or in any way identified by the title of the bill, it cannot be sufficient to afford the notice of the contents of the bill that is required by the Constitution for local or special legislation. Even if the publication of notice of a proposed local law as actually made was legally sufficient in describing the boundaries within which the proposed bill was designed to operate, the title to the bill as introduced and as passed by each House, as shown by the journal entries, does not in any way identify the locality so as to show that the particular bill is the one of which notice was published, so those to be affected and the public will be advised as to the object or subject of the bill. The title of an Act shall express the subject embraced in the Act. Section 16, Article III, of the constitution. The title of the bill as it was passed by each House as shown by the legislative journals is incomplete and misleading in that it in no way identifies the local subject upon which the bill, if enacted into law, would operate. Even if the title to the bill as it was introduced and as it was passed by both Houses, was in fact the same as the title to the bill that was, after its passage, signed by the legislative officers and by the Governor, the journal entries showing a fatally defective title to the bill when it was in-

troduced and passed, control. State ex rel. Attorney General, vs. Green, 36 Fla. 154, 18 So. 334. The title of a bill as it appears in journals, not the title as it appears in the bill as introduced, affords to the public notice of the subject matter of the bill that is being acted on by the legislature. ''Each House shall keep a Journal of its proceedings, which shall be published.'' Section 12, Article III, constitution. The journals are controlling as to the title of a bill passed by each House.

There is no showing that the additions to the title to the bill as shown by the journals, when the bill was reported to each House by the Joint Committee on Enrolled Bills, had been made by the legislature, even if a material amendment of the title by the legislature after the bill had been passed by each House, could cure the fatally defective title under which the bill was introduced into the House and under which the bill passed each House as shown by the journal entries. See State ex rel. Attorney General v. Green, 36 Fla. 154, 18 So. 334, and authorities therein cited; State ex rel. Boyd v. Deal, 24 Fla. 293, 4 So. 899, 12 Am. St. Rep. 204.

A *material* variance in the subject expressed in the title, between the bill which actually passed the two houses of the legislature, as shown by the legislative journals, and the enrolled bill which received the executive approval and signature, is fatal to the entire law. Stein v. Leeper, 78 Ala. 517.

As shown by the legislative journals, which are controlling, when House Bill No. 971 was introduced in the House and when it was passed by the House and by the Senate, the title to the bill did not in any way indicate ''the locality where the matter or thing to be affected may be situated,'' and consequently the title did not express the subject of the bill to be enacted into law. The title was, therefore, fatally defective at least for a local bill,

and the passage of the bill was not in accordance with the requirements of the constitution for the enactment of special or local laws. The approval by the Governor of the bill with a sufficient title does not cure the fatal defect in the title of the bill as it was introduced and passed by each House of the legislature as shown by the journal entries.

It is not necessary to discuss the sufficiency of the publication of notice of the proposed special or local laws, required by section 21, Article III of the Constitution as amended in 1928, or to consider the effect of a failure to comply with the requirements of Chapter 13791, Acts of 1929, that "a true copy of the notice published or posted shall also be attached to the bill when introduced," which "together with affidavit of proof of publication shall accompany the bill throughout the Legislature and be preserved as a part thereof in the office of the Secretary of State."

Decree Reversed.

BUFORD, C.J., AND ELLIS, TERRELL, BROWN AND DAVIS, J.J., concur.