STATE, *ex rel.* X-CEL STORES, *Inc.*, v. J. M. LEE, as Comptroller.

166 So. 568.
Opinion Filed January 14, 1936.
Affirmed on Rehearing February 25, 1936.
Second Rehearing Denied March 23, 1936.

*Claibourne M. Phipps* and *Reginald L. Williams,* for Relator;

*Cary D. Landis,* Attorney General, and *H. E. Carter* and *J. V. Keen,* Assistants, and *Henry C. Tillman,* for Respondent.

DAVIS, J.—This is one of the several cases presented to this Court and required to be decided by it involving the constitutionality of Chapter 16848 (Senate Bill No. 724) Acts 1935, Laws of Florida. In the other cases, all points raised in the present case were specifically discussed and decided adversely to the contentions of relator in this case, except the special and particular proposition contended for in the instant proceeding to the effect that said Senate Bill No. 724 was never constitutionally passed by the Legislature of Florida.

The grounds of the last mentioned contention are alleged to be:

(1) The journal entries in the House of Representatives and in the Senate, if considered conclusive, show beyond

question that Senate Bill No. 724 was never enacted by either House of the Legislature in accordance with the mandatory procedure laid down in Article III of the State Constitution.

(2) In order to sustain as valid the method pursued by the Legislature in the final passage of said Senate Bill No. 724, in the form it was signed by the presiding officers and clerks of the several Houses of the Legislature, the courts must assume that (contrary to the journal entries) some action was taken by the Legislature radically different from that shown by the Legislature's journals, of which last mentioned action there is no evidence in the journals.

We shall only undertake to discuss in this opinion the question that is special and peculiar to this proceeding.

The remaining propositions raised and that would otherwise be required to be decided in this suit have already been so fully discussed and disposed of in the several opinions of this Court in the cases of State, *ex rel.* Lane Drug Stores, v. Simpson, 122 Fla. 582, 166 Sou. Rep. 227 (decided November 26, 1935, and affirmed on rehearing February 25, 1936), and State, *ex rel.* Thos. B. Adams, v. Lee, 122 Fla. 639, 166 Sou. Rep. 249 (decided November 27, 1935), that further dissertation on same in connection with the disposition of this case is unnecessary.

Accordingly, we revert to the single question: Was Senate Bill No. 724 constitutionally passed by the several Houses of the 1935 Legislature, so as to become a constitutionally enacted law in the precise form in which it was in due course signed by the Governor and filed in the office of the Secretary of State?

Stated differently, as is contemplated by our briefing rules, the question here brought into controversy may be amplified and otherwise propounded as follows:

Where a legislative bill is introduced into the State Senate under a proper title conforming to Section 16 of Article III of the Constitution, and under that title it is duly read three times, amended, and passed by the Senate, and is thereafter engrossed as amended and formally transmitted to the House of Representatives with a request to the House of Representatives that the House consider it as a legislative proposal originating in, and passed by, the Senate, and thereupon the House of Representatives in due course of legislative procedure receives the original Senate Bill, reads it the first time by its title, then constitutionallly waives the rules and causes it to be read the second time by its title only,* after which the House of Representatives adopts, and proposes for concurrence in and by the Senate, seven specific House amendments changing the title and body of the Senate Bill as it had come from the Senate duly engrossed and been taken up for consideration by the House of Representatives, one of which *proposed* amendments was an amendment to the title of the Senate Bill to make it conform to certain other amendments to the text of the bill that had been earlier adopted and proposed in the House of Representatives, and under such circumstances the Senate Bill is, in due course, read a third time in full and passed by a yea and nay vote in the House of Representatives, as amended, consequent upon which legislative action in the House of Representatives, the bill is immediately referred back to the Senate for its concurrence in the seven proposed House amendments, whereupon four of the amendments are concurred in, but three of same are rejected, does the subsequently adopted report of a legislative conference committee adopted *viva voce* by the House and Senate as a pro-

*As expressly permitted to be done if agreed to by a two-thirds vote. See Section 17 of Article III, Constitution of Florida.

posal for settlement of the differences existing between the two Houses over the three Senate rejected House amendments, one of the amendments included in the conference committee report adopted being the House amendment to the title of the Senate Bill, under which proposed amended title the Senate Bill had been passed by the House on third reading, but which the conference committee report recommended that the House of Representatives recede from, constitute a constitutional enactment of the Senate Bill under the original title by which the Senate Bill was first introduced into the Senate, it appearing that the tiitle of the Senate Bill was enrolled, and as signed by the legislative officers, and as approved by the Governor, is. now the identical title under which the Senate Bill was first introduced into the Senate and passed by it on third reading, despite the frustrate attempt of the House of Representatives to have the initial Senate title changed during the course of the Senate Bill's legislative consideration and passage after it left the Senate?

Our conclusion is that the foregoing question must be answered in the affirmative for the following reasons:

The requirement of Section 16 of Article III is that each "law" (not each bill as introduced or considered) when "enacted" by the Legislature, shall contain but one subject and matter properly connected therewith, which subject shall be briefly expressed in the title. Thus, while the title to a mere legislative "bill" as distinguished from the title of a "law enacted by the Legislature" is a material part of the "bill" at all times, because even a "bill" is constitutionally required to be legislatively handled and dealt with by its title during a part (at least) of its course of legislative progress up to its final passage, and material differences between the titles of "bills" as passed by the House

of Representatives and as subsequently passed by the Senate, may defeat the validity of such bills* when the legislative history of the "bill" as recorded in the legislative journals (considered as a whole) demonstrates beyond a reasonable doubt that what purports to be a "law enacted by the Legislature" did not originate as a "bill" and pass both Houses under such recorded legislative procedure that it can be certainly determined from the legislative journals that both of the legislative branches agreed to, and passed, *the same or identical* "bill," under the same title and with the same text in the body thereof, as is evidenced by the enrolled bill that appears to have been authenticated as a "law enacted by the Legislature" within the purview of Section 16 of Article III of the Constitution of Florida, yet there is nothing in the Florida Constitution that precludes an agreement *at any time by both branches* of the Legislature on the ultimate title to a completely passed bill as it is ordained to be finally published as a "law enacted by the Legislature," so long as the legislative records show that the title of the proposed "law (as so) enacted by the Legislature," and as finally submitted by the Legislature to the Governor in the form of an enrolled bill to be considered by him, is an agreed title that at some stage of the bill's enactment has been adopted by concurrence of both the House of Representatives and the Senate therein, at a

*Freeman v. Simmons, 107 Fla. 438, 145 Sou. Rep. 187; State v. Skaley, 108 Fla. 506, 146 Sou. Rep. 544; State, *ex rel.* Indian River Mosquito Control Dist., v. Helseth, 104 Fla. 208, 140 Sou. Rep. 655; Volusia County v. State, 98 Fla. 1166, 125 Sou. Rep. 375; Hillsborough County v. Temple Terrace Assets Co., 111 Fla. 368, 149 Sou. Rep. 473; State, *ex rel.* Attorney Gen., v. Green, 36 Fla. 154, 18 Sou. Rep. 334; State, *ex rel.* Markens, v. Brown, 20 Fla. 407; State, *ex rel.* Boyd, v. Deal, 24 Fla. 293, 4 Sou. Rep. 899; Amos v. Mosely, 74 Fla. 555, 77 Sou. Rep. 619.

time when the Legislature was still in possession of the bill and still possessed of legislative jurisdiction over it. Therefore, when it affirmatively appears that there has been an agreement on the part of the House and Senate as to the title to a "law enacted by the Legislature" (to use the language of Section 16 of Article III of the Constitution itself) and when it further appears that such agreed title is in keeping with the original subject of the "bill" as expressed in its title when it was first introduced into the Legislature as a proposed enactment,* it cannot be said that Section 16 of Article III of the Constitution has been violated.

The object of Section 16 of Article III of the Constitution was not a design to embarrass legislation by making laws unnecessarily restrictive in their scope and operation and thus to multiply their number. On the contrary, its purpose was to remedy (1) the practice of bringing together *into one bill* subjects *diverse* in their nature, *and having no necessary nor appropriate connections,* with a view to combining in their favor the advocates of all, and thus secure the passage at one time of several unrelated measures, no one of which could succeed upon its own merits alone, and (2) to outlaw the practice of inserting, by dexterous manipulation, clauses of which the title to the bill gave no intimation, thereby sanctioning the passage of legislative

---

*Rule XIX of the House of Representatives of the United States Congress, which by express adoption of the Florida House of Representatives become *pro tanto* a part of its own rules that it had adopted under authority of Section 6 of Article III of the Constitution, expressly provides that amendments to the title of a bill or resolution shall be in order to be made, even after a bill's final passage. Thus the constitutional requirement that the title to each "law enacted by the Legislature" is capable of being enforced at all stages of the required legislative procedure up to the act of enrollment.

provisions which the Legislature's membership could not be made by the title to the bill generally aware. See: 1 Cooley's Constitutional Limitations (8th Ed.), pages 291, *et seq.*

Since the last stated purpose can be fully subserved by a legislative agreement upon the ultimate title of a legislative bill *at any time while the bill is still before the Legislature, and within its jurisdiction,* the Legislature necessarily has power at any stage in the procedure for amendment, to agree upon an appropriate title to a legislative bill that will fully comply with Section 16 of Article III of the Constitution. This is necessarily so in order that the Legislative Act, as officially authenticated (under Section 17 of Article III) may, in accordance with the Constitution, and in due course of procedure, become a "law enacted by the Legislature" under a title that, as an *enacted* law, embraces but one subject and matter properly connected therewith, which subject of such enacted law will be briefly expressed in the title as finally concurred in by both Houses of the Legislature in accordance with the mandatory provisions of Section 16 of Article III relating to that subject.

Therefore, so long as the title to a "law enacted by the Legislature" embraces but one subject and matter properly connected therewith, which subject is briefly expressed in the title of the Legislative Act as it is finally enrolled, authenticated and presented by the Legislature to the Governor prior to its becoming such "law enacted by the Legislature," it is no objection how, or by what method of parliamentary procedure, the title to such "law enacted by the Legislature" was finally agreed upon, or arrived at, in the course of its legislative history prior to the time the Act left the hands of the Legislature, so long as the title as it finally appears on the "law enacted by the Legislature," conforms to Section 16 of Article III of the Constitution,

and is in consonance with the title to such law as it was first introduced into the Legislature as a proposed legislative enactment in the form of a legislative bill.

This is true because Section 6 of Article III of the Constitution gives the Legislature full power to adopt and enforce its own rules of legislative procedure. So long as the legislative rules are in harmony with the constitutional plan for making laws, proceedings had in conformity thereto are not invalid. There is nothing in Section 16 of Article III of the Constitution that forbids either a rule, or a commonly accepted practice on the Legislature's part, that leads to the constitutional result that each "law" enacted by the Legislature shall contain a title adopted for it by legislative action, which title shall briefly express the single subject of such law. In arriving at such result, which is exactly what Section 16 of Article III requires in terms, the Legislature is limited only by the requirement that in finally agreeing upon a title to its legislative enactments, it must act while it is still in possession of the measure to be affected and thereby vested with jurisdiction over it, and by the further requirement that the title as finally agreed upon by the Legislature for its enacted "law," must not be materially inconsistent with the subject undertaken to be expressed in the title to its proposed "bill" as such was originally passed by the Legislative House in which such bill originated.

In this case, it appears that the title to Senate Bill No. 724, as it was finally agreed upon in the Legislature by its adoption of the conference committee report of the joint conference committee appointed by the House and Senate, and as it was finally enrolled, signed by the presiding officers and the clerks of each House, and thereafter presented to the Governor, is the identical title under which such bill

was originally passed by the Senate, engrossed and sent to the House of Representatives for the latter's consideration and favorable vote of concurrence in final passage as a Senate proposed enactment of the Legislature.

The fact that after such Senate Bill No. 724 had been passed by the Senate under a particular title, engrossed and sent to the House of Representatives, which latter House had thereafter, before final passage in the House, adopted as an amendment, an entirely different title for the proposed law, is immaterial to the final result as a sufficient compliance with the constitutional method of enacting bills into law. This is so because the House amendments, whether to the body or to the title of said Senate Bill No. 724, even though proposed in and actually adopted by the House of Representatives prior to its third reading and final passage of the Senate Bill, were nevertheless at all times prior to acceptance by the Senate mere House *proposals* for amendments which could not become, and therefore did not become, any part of the engrossed Senate Bill at the time of its third reading and final passage in the House on May 24, 1935.

Where one House of the Legislature advances to final passage and passes a bill originating in its body, and such bill is by it thereafter engrossed in the form, and under the title, by which it passed, and it is thereupon transmitted to the opposite House for its consideration and passage, the adoption by the latter House of proposed amendments to either the body, or to the title of the bill it has received from the House of the bill's origin, become in contemplation of law mere conditional limitations annexed to the final passage of the bill in its original form by the House whose concurrence in its final passage has been requested by the House in which it originated and was engrossed. Such conditional

limitations as annexed to the final passage of the original bill by the House last required to cast its vote on its enactment as an Act of both Houses of the Legislature, become and remain mere *proposals* to the opposite House which must be either concurred in, or compromised by, the subsequent action of both Houses, or they are without any legal significance except to evidence such a disagreement between the two branches of the Legislature as to the context of the affected bill as will preclude any constitutional enrollment and authentication of such bill as a bill "passed" and entitled to be enrolled and signed in accordance with Section 17 of Article III of the Constitution. Hence, a continued disagreement as to the title or contents of a bill, even after it has been voted for in both Houses, will defeat such bill's ever becoming a law by making it impossible to lawfully enroll, authenticate, and present it to the Governor in the prescribed form required by the Constitution for it to become a statute.

The House of Representatives had no authority in and of itself, without the concurrence of the Senate, to actually change any part of the original Senate Bill No. 724, as it had been passed and engrossed in the Senate and thereafter duly certified to the House of Representatives for passage by the House.

All that the House of Representatives was authorized to do was to consider and pass the engrossed Senate Bill No. 724, just as it came over from the Senate, either unconditionally, or with reservations in the form of proposed amendments. To the latter the Senate would be requested to either agree, or settle with the House of Representatives through a joint conference committee, before the Bill theretofore designated only as Senate Bill No. 724 could ultimately result in a completed legislative "Act," authorized to be enrolled and authenticated as such and duly presented

to the Governor for his consideration and approval as a "law," in accordance with Sections 7 and 28 of Article III of the Constitution.

Conference committees may be appointed in all cases of disagreements or differences of opinion between the two Houses of a Legislature and have been sanctioned by a parliamentary usage that is considerably older than the Constitution itself.

In providing for a bicameral legislative branch of the government the framers of the Constitution, and the people who adopted it, necessarily contemplated that there would inevitably be differences of opinion between the House of Representatives and the Senate on matters depending between them, particularly so on the occasion of bills passed in one House and thereafter amended and passed by the other as amended. It is accordingly to be presumed that the people knew of, and intended to sanction, the employment of the ordinary parliamentary methods that had long been in use in bicameral legislatures as a means of adjusting differences between the House and Senate through a joint conference committee with managers appointed thereto by each of the disagreeing Houses.

So viewed historically, it may be said that as a matter of constitutional law, Section 1 of Article III of the Constitution creating a legislative branch of the Government to consist of a Senate and a House of Representatives, implies the constitutional right on the part of each branch of the Legislature so created to employ the offices of conference committee managers to interchange views and come to and concur in conclusion by means of select committees appointed on the part of each House.*

*For an interesting discussion of the conference committee as a part of our American bicameral legislative system, see Mathews on "American State Government," pages 190, *et seq.*

Conferences designed to reconcile differences existing between the two Houses of the Legislature concerning amendments to bills, depending between them as to which one of the Houses has disagreed, comprehend a full and free discussion on the part of the managers thereof *viva voce,* together with such interchanges of propositions for acceptance, rejection or modifications in the disputed legislative propositions as may seem agreeable and authorized to be made in a parliamentary way, and which may tend to bring the sense of the two Houses together in a manner to be evidenced by a report in writing to the respective Houses of the substance of what has been suggested and agreed to by the representatives on both sides. By such means the terms of any reported agreement may, when entered on the journals of each House, and accepted by the approving votes of the respective Houses themselves, be made a permanent legislative memorial of equal dignity with the main proposition or legislative bill concerning which the disagreement between the two Houses occurred.

The agreement by vote, *viva voce* or otherwise, of the disagreeing Houses of a bicameral Legislature to a conference committee report whose adoption implies a settlement and agreement bringing the sense of the two Houses together in one and the same legislative proposition theretofore depending between the Houses, amounts to a constitutional legislative mode of action comprehended as a valid part of our legislative procedure for the enactment of proposed legislative bills into laws. And when the agreed result of such proceedings is duly incorporated into and made a part of the Legislature's enactment as duly enrolled, authenticated and presented to the Governor, it thereupon becomes a valid part of the Legislature's enactment of a projected law that will be upheld and recognized by the Courts

as such, absent the showing of some specific violation of a constitutional provision pertaining to the subject matter comprehended therein.

In this case the journals of the House of Representatives and of the Senate, of which we take judicial notice when called to our attention in a controversy involving a consideration and investigation of the contents of same, when viewed as a whole, as they must be in every case where it is claimed the constitutional method of enacting a valid law was not observed, affirmatively show that Senate Bill No. 724 (now Chapter 16848, Acts 1935) was duly considered and agreed to in the Legislature with reference to the subject, and with the particular title, under which it now appears published as a "law enacted by the Legislature," and signed by the Governor. Therefore, relator's objection to the manner of its consideration and passage, insofar as its title and contents are brought into controversy, are not well taken, for the reasons hereinbefore pointed out and given in this opinion.

Final judgment on the pleadings, which consist of the alternative writ of mandamus and a special return filed by the respondent, will be entered in favor of respondent, with costs, unless an amendment to the alternative writ conformable to the holdings of this Court in the premises in issue in this cause, shall be made and filed by relator within fifteen days after the date of the filing of this opinion.

WHITFIELD, C. J., and ELLIS, TERRELL and BUFORD, J. J., concur.

BROWN, J., dissents.