STATE, *ex rel.* LANE DRUG STORES, INC., v. CLYDE H. SIMPSON, as Tax Collector of Duval County.
Original Mandamus.

STATE, *ex rel.* LANE DRUG STORES, INC., v. R. H. CARSWELL, as Tax Collector of Duval County.
Original Mandamus.

STATE, *ex rel.* C. CHAVERS, *et al.,* v. J. M. LEE, as Comptroller.
Original Mandamus.

C. CHAVERS v. JOHN P. HARRELL, Sheriff of Washington County.
Original Habeas Corpus.

STATE, *ex rel.* THOMAS B. ADAMS, an officer of the Court, *et al.,* v. J. M. LEE, as Comptroller.
Original Quo Warranto.

STATE, *ex rel.* X-CEL STORES, INC., v. J. M. LEE, as Comptroller.
Original Mandamus.

166 So. 262.
En Banc.
Order Entered February 25, 1936.

Thomas B. Adams, Henry P. Adair, John M. McNatt, Knight, Adair, Cooper & Osborne, H. H. Wells, B. K. Roberts, Stanton Walker, J. Van Wilhite,. and William K. Whitfield (of Tallahassee), for Relators;

Claibourne M. Phipps and Reginald L. Williams for Relator, X-Cel Stores, Inc.;

Cary D. Landis, Attorney General, H. E. Carter and J. V. Keen, Assistants, and Henry C. Tillman, for Respondents.

## ON REHEARING GRANTED.

PER CURIAM.—A rehearing having been granted in these several causes by order entered herein under date of January 24, 1936, and each of the above styled causes and proceedings having been fully and at length reargued before the Supreme Court sitting *en banc,* all of the Justices thereof being present and participating, and the several causes having now been fully reconsidered, and the Court now being advised of its opinion and judgment in the premises, it is thereupon considered, ordered and adjudged by this Court that the several opinions heretofore agreed to and adopted by a majority of this Court in the cases of State, *ex rel.*

Lane Drug Stores, v. Simpson (decided November 26, 1935); State, *ex rel.* Thomas B. Adams, v. Lee (decided November 27, 1935), and State, *ex rel.* X-Cel Stores, Inc., v. Lee (decided January 14, 1936), be and the same are hereby readopted and agreed to by the majority of the Justices now participating in the decision of these several cases on rehearing, and further, that all appropriate orders and judgments in conformity to such opinions that have been heretofore entered, be and the same are hereby reinstated and made the several judgments and orders of this Court in the premises with like force and effect as originally entered.

Opinions heretofore filed readopted on rehearing, and appropriate judgments entered in conformity therewith.

WHITFIELD, C. J., and TERRELL, BROWN and DAVIS, J. J., concur.

ELLIS, P. J., and BUFORD, J., dissent.

ELLIS, P. J. (concurring in denial of petition for rehearing in the X-Cel Store case).—This matter was thoroughly considered. I think that the Legislature did not constitutionally enact the bill, but a rehearing on this proposition is unnecessary.

WHITFIELD, C. J. (concurring).—In State, *ex rel.,* v. Dillon, 42 Fla. 95, text 114, *et seq.,* 28 So. 781, it is said:

"Sections 14 and 17, Article III, Constitution of 1885, read as follows: 'Sec. 14. Any bill may originate in either House of the Legislature, and after being passed in one house, may be amended in the other.' 'Sec. 17. Every bill shall be read by its title on its first reading in either House, unless one-third of the members present when such bill may be pending shall deem it expedient to dispense with this rule. Every bill shall be read by its sections on its second reading and on its final passage, unless on its second reading

two-thirds of the members present in the House where such bill may be pending shall deem it expedient to dispense with this rule. The vote on the final passage of every bill or joint resolution shall be taken by yeas and nays and to be entered on the journal of each House; *provided,* that any general revision of the entire law embodied in any bill shall not be required to be read by sections upon its final passage and its reading may be wholly dispensed with by a two-thirds vote. A majority of members present in each House shall be necessary to pass every bill or joint resolution, all bills or joint resolutions so passed shall be signed by the presiding officer of the respective Houses, and by the secretary of the Senate and the Clerk of the House of Representatives.' There are differences of opinion among the courts as to what constitutes the 'final passage' of a bill, within the meaning of constitutional provisions relating to the vote on the final passage of bills being taken by yeas and nays and entered upon the journals of the Legislature. Cases have been cited to us holding that the 'final passage' meant is the vote in each House which adopts the bill as it is afterwards enrolled and presented to the Governor for his signature. The provision which we have quoted from our Constitution speaks of the first and second reading and final passage of the bill, and it seems to us from the connection in which they are used that the words 'final passage' in our Constitution can legitimately refer to nothing else than the vote in each House which adopts the bill after it has been read again for the purpose of being put upon its passage. No doubt after passing one House it may be very materially amended in the other and there passed as amended. The Constitution expressly recognizes this fact and authorizes it to be done, but it does not require such bill as amended to be read three times in the House originating the bill be-

fore concurring in the amendments proposed by the other (State, *ex rel.* Turner, v. Hocker, 36 Fla. 358, 18 South. Rep. 767), nor does it require the vote on the adoption of the amendments to be taken by yeas and nays and entered on the journal. The clause quoted was framed in view of parliamentary practice as is evident from the use of terms first and second readings and final passage, and its object was to regulate the number of readings to which the bill should be subjected in each House and to require the vote to be taken by yeas and nays and entered upon the journals upon the passage of the bill after such readings. Such has been the legislative construction of the provision in question for many years, and we are satisfied that construction is correct." See also State v. Crews, 130 Ark. 282, 197 S. W. 4, Ann. Cas. 1918D, 460 L. R. A. 1918 A 567; 59 C. J. 570; 25 R. C. L. 882; 54 Ala. 599.

The legislative Journals show that Senate Bill No. 724 was introduced in the Senate and after being amended in the Senate was duly passed by a yea and nay vote of the Senate; that the same bill with proposed amendments thereto duly made by the House, was passed by a yea and nay vote by the House; that the Senate concurred in some of the amendments proposed by the House and refused to concur in other amendments proposed by the House; that a conference committee composed of duly appointed members of each House considered the bill with proposed amendments, and their report on Senate Bill No. 724 was adopted by each House as were also germane amendments to Senate Bill No. 724 stated in the conference report. It is contended that under the Constitution the bill as reported by the conference committee with proposed amendments, should have been adopted by a yea and nay vote in each House duly entered on the Journals to make the bill validly

enacted. The action taken on the conference report was not a final passage of Senate Bill No. 724. The final passage of the bill was on third reading in each House several days before the reference to the conference committee. The Constitution requires the yea and nay vote to be taken and entered on the Journals "on the final passage of every bill," not on the adoption of amendments proposed by a conference committee of the Senate and House.

Under Section 12 of Article III of the Constitution "the yeas and nays of the members of the House on any question shall at the desire of any five members present, be entered on the journal."

Section 6, Article III, of the Constitution provides that "Each House shall * * * determine the rules of its proceedings," and the proceedings taken by each House in adopting amendments to Senate Bill No. 724 as reported by the conference committee, do not violate the provisions of Section 17, Article III, of the Constitution, which provides that "The vote on the final passage of every bill * * * shall be taken by yeas and nays, to be entered on the Journal of each House." The adoption of such amendments not being "the final passage of" the bill. State, *ex rel.* Dillon, *supra;* 262 S. W. 873.

The command of Section 12, Article III, of the Constitution, that "Each House shall keep a Journal of its own proceedings" does not require a Journal entry to be made of every action taken on proposed amendments to bills pending in the Legislature. See West v. State, 50 Fla. 154, 39 So. 412.

If under the Dillon case after a bill has been duly passed by the Senate it may be passed in the House with proposed amendments thereto, and the amendments proposed by the House can be concurred in by the Senate without a yea and

nay vote, the same rule should apply in each House where amendments to the Senate Bill are presented by a duly appointed conference committee and such amendments are adopted by each House.

Senate Bill No. 724 having been duly passed by the Senate by a recorded yea and nay vote and also duly passed by the House with proposed amendments, by a recorded yea and nay vote, some of which House amendments are concurred in by the Senate, and amendments germane to the Senate Bill proposed by the conference committee having been adopted by both Houses, the bill with the amendments so concurred in or adopted was duly enacted. See 59 C. J. 570; Johnson v. City of Great Falls, 38 Mont. 369, 99 Pac. 1059; 16 Ann. Cas. 974, and note. See Junkins v. Entzminger, 102 Fla. 167, 135 So. 785; Callison v. Brake, 129 Fed. 196.

TERRELL, BUFORD and DAVIS, J. J., concur.

ELLIS, P. J. (dissenting).—I did not participate in the first hearing of any of the above styled cases except in that of the one entitled State, *ex rel.* X-Cel Stores, v. Lee, as Comptroller (decided January 14, 1936, opinion by Mr. Justice DAVIS).

In that case the relator is alleged to be engaged in the business of a retail dealer in hay, grain, feed, seeds, insecticides, fungicides and fertilizers; that on October 1, 1935, it operated stores in the cities of Tampa, Plant City, Orlando and Winter Haven; that it made application in due form to the Comptroller for a license under the provisions of Chapter 16071, Laws of Florida, 1933, but the Comptroller declined to issue the license upon the ground that the passage of Senate Bill No. 724 (Chap. 16848, Laws of Florida, 1935) repealed Chapter 16071, *supra.* The Act of 1935, it was contended by the Comptroller, required the pay-

ment of a greater sum by the relator for the privilege of continuing or engaging in the business of a retailer as defined in that Act.

The relator contended that Chapter 16071, *supra,* had not been repealed because Senate Bill No. 724 (Chap. 16848, *supra*) had never been passed by the Legislature of Florida in the manner required by Article III of the Constitution of Florida. It was also contended that the Act of 1935 was void in that if enforced in would result in the X-Cel Stores, Inc., being deprived of property without due process of law in violation of Section 12 of the Declaration of Rights of the Florida Constitution and of Section 1 of Article XIV of the Constitution of the United States.

· The Comptroller refused to agree with that contention and insisted that the X-Cel Stores comply with the terms of the 1935 Act. Thereupon the X-Cel Stores, Inc., a corporation, applied to this Court for an alternative writ of mandamus against the Comptroller to compel him to file the corporation's application for a license or permit to do business in Florida and to issue the same under the provisions of Chapter 16071, *supra.*

The alternative writ of mandamus was issued on October 3, 1935, by Division A of this Court. The respondent answered the alternative writ on October 12, 1935. The answer averred the validity of Chapter 16848, laws of 1935 (Senate Bill 724). The answer comprises eighty-five pages of typewritten matter and is a full denial in detail of the allegations of the alternative writ and a lengthy argument in support of the wisdom, reasonableness and propriety of the latter Act.

On the 18th of October a motion to strike certain portions of the answer and a demurrer to the answer were filed.

On January 14, 1936, this Court handed down its judg-

ment in the case. The opinion was written by Mr. Justice DAVIS, all members of the Court participating. Mr. Justice BROWN dissented without opinion.

The Court held that the cases which had preceded the X-Cel Stores, Inc., case and which had been decided by this Court had held adversely to the relator's contention upon the constitutionality of the Act as a valid exercise of legislative power, assuming that the Act had validly passed; that the question presented therefore was whether the Legislature in regular session had observed the requirements of the Constitution in the matter of the passage of the Act by the two Houses of the Legislature of the Session of 1935 "so as to become a constitutionally enacted law in the precise form in which it was in due course signed by the Governor and filed in the office of the Secretary of State."

Mr. Justice DAVIS discussed very fully and most carefully the question presented.

An oral argument was heard before the Court on November 4, 1935, Honorable Frank A. Smith, Judge of the Ninth Judicial Circuit, sitting in place of the writer, who was absent on account of illness, but when the case was decided the writer had returned to his duties and participated in the decision.

A rehearing was granted and the cause was again argued upon all points involved. In that argument and in the briefs which were filed by counsel for relator it was earnestly asserted that an inspection of the Journals of the two Houses will reveal conclusively that the House never concurred in the bill as passed by the Senate, that while the bill which originated in the Senate was in its control, it was amended by the Senate both in its title and in Section One; that these amendments were not receded from by the Senate. No Conference Committee ever attempted to reconcile the

difference between the bill as sent to the House and the amendments to its title and Section One as adopted by the Senate after it had with the House amendments been certified by the House to the Senate. So the relator definitely and clearly maintains that the two Houses did not pass the same bill and that neither House finally passed the bill as it was enrolled and signed.

The statement of facts given in the brief of Messrs. Phipps and Williams, of counsel for relator in this case, as also the brief of Messrs. Adams and Adair, of counsel for relators in the quo warranto proceeding, is not so complete as the journals of the Legislature make possible. Indeed counsel understate the case. The history of the attempted legislation as revealed by the journals is much more remarkable than pointed out in the briefs. It is not my purpose to give a lengthy account of that history, nor even attempt a complete synopsis of it, but I will undertake to give a statement of ultimate facts.

When the bill, which was introduced in the Senate, was considered by that body several amendments, eight in number, were adopted. The bill passed the Senate as amended. It was then referred to the Committee on Engrossed Bills, which committee engrossed the same together with the amendments which had been adopted. In that state it was certified to the House.

The message sent to the House was that the Senate had passed Senate Bill No. 724. It is not clear what was submitted to the House, whether the bill as originally proposed in the Senate or that bill and amendments separately engrossed by the Senate Committee.

The House proceeded to consider the bill and adopted eleven amendments. The bill passed the House as amended in the House. There is nothing to show that the amend-

ments adopted in the Senate were considered at all, or whether they were submitted to the House or that the bill as introduced was recast to include the Senate amendments. The House caused the bill as it had passed the House with its amendments to be engrossed. The House then returned the bill to the Senate with only seven of the eleven amendments which the House had adopted. The Senate concurred in amendments 2, 3 and 4, but refused to concur in amendments 1, 5, 6 and 7. The Senate, however, advised the House that it had concurred in amendment 1 as well as amendments 2, 3 and 4 and that it had not concurred in amendments 5, 6 and 7.

The House refused to recede from its amendments 5, 6 and 7, so a conference committee was appointed. One of the Senate amendments was in relation to a division of the revenue to be collected and provided that one-fifth of it should be deposited in a "Relief Pension Fund."

The conference committee on the part of the House was directed to adjust the differences existing on House Amendments Nos. 5, 6 and 7 to the bill. The committee on the part of the Senate was required to do the same thing, that is to say, to adjust the differences existing between the two Houses on House Amendments 5, 6 and 7.

The first report of that committee was adopted by the Senate. Another motion was made and adopted that each of the amendments as set forth in the report be adopted, which was agreed to and the amendments were adopted. The first report of the committee seemed never to have reached the House. The Senate, however, reconsidered the vote by which it adopted the report and on motion recommitted the majority conference committee report for further consideration. The second report was a practical revision in substance of the bill so far as Sections 4 and 15

were involved, House amendments 5 and 6. The committee recommended that the House recede from its amendments 1 and 7 which related to Section 1 and the title of the Act, but the report did not recommend that the Senate recede from the amendments which it had adopted. That report was adopted by the House by a yea and nay vote and the same was spread on the House Journal and that action was certified to the Senate. The Senate did not adopt the second Joint Conference Committee report by a yea and nay vote and no such vote was spread on the journals of the Senate.

The four amendments which were adopted by the House but never considered by the Senate were never involved in the difference between the two Houses. The amendment offered by Senator Gomez relating to a deposit of one-fifth of the revenue in a "Relief Pension Fund" was never receded from by the Senate except insofar as it was affected by a recasting by the Committee of Section Fifteen, nor did the House agree to it, and the yea and nay vote was not taken in the Senate on the final passage of the bill as the same was recast by the Joint Conference Committee. If the Committee Report is considered as a new bill, then there was no adoption of it by the Senate by a yea and nay vote. If it was merely an amendment to the bill as originally proposed in the Senate then the adoption of the amendment left undisposed of both the House and Senate amendments.

I think, therefore, that the bill as it was finally presented to the Governor was not adopted in the House because the four amendments to it as made by that House and never reported to the Senate were not passed on by that body, and the three amendments proposed by the House and adopted by the Senate except insofar as they were affected by the second report made by the Joint Conference Commit-

tee were never disposed of, nor were the Senate amendments which were adopted receded from or disposed of, and the substantially new bill proposed by the second report of the Joint Conference Committee was never adopted by the Senate by a yea and nay vote.

It is impossible to construct the bill as it was presented to the Governor from the journals of the two Houses.

No definite, certain and perfectly constructed bill was adopted by either House. No yea and nay vote on the final passage of such a bill was taken in either House. The document which was at last presented to the Governor is a synthetic legislative and committee production into which is written, by what authority no record discloses, words and sentences expressing what may have been regarded as the effect of the adoption of amendments and committee recommendations. There is no authority in this State in the nature of judicial decisions which declares such attempted legislation to be valid.

The situation existing here is not the same as that which existed in the case of Carlton v. Mathews, 103 Fla. 301, 137 South. Rep. 815.

Section 17 of Article III of the Constitution requires: "The vote on the final passage of every bill or joint resolution shall be taken by yeas and nays, to be entered on the journal of each House."

The purpose of that constitutional provision is to require the members of each House present to identify themselves by a definite vote appearing of record with the enactment of the law or with the view which requires its rejection. It is the last act of the members in the passage of a bill, but not the last act in its ultimate production as a legislative enactment.

The Constitution requires identity of the members present

with the fate of the proposed legislation, that its passage or defeat may be established in an orderly and certain manner and not that the identity of the members may be submerged in a conglomerate *viva voce* vote in which the identity of no person voting can be established and the passage or defeat of the bill may be determined by the verbal declaration of the presiding officer. The purpose of the constitutional requirement is also to preserve a record evidence of the legislative enactment of which the Court takes judicial knowledge. See State v. Brown, 20 Fla. 407; State, *ex rel.* Boyd, v. Deal, 24 Fla. 293, 4 South. Rep. 899; Amos v. Moseley, 74 Fla. 555, 77 South. Rep. 619.

This case is distinguished from the case of State v. Dillon, 42 Fla. 95, 28 South. Rep. 781, in that the bill under consideration here was not one in which the bill passed in one house and was amended and passed in the other, and such amendments were adopted by the House in which the bill originated, but it was one in which the material parts of the bill were amended in the House to which it was submitted by the House in which it originated and the latter House rejected such amendments and failed to consider others and concurred in still other amendments, after which a joint conference committee appointed to adjust the differences existing between the two Houses upon the material parts of the originally proposed legislation presented a new and different bill differing widely in substance and purpose and ignoring material amendments which had been considered and adopted by each House respectively and not agreed to by the other.

No parallel exists in the legislative history of this State as shown by the judicial interpretation of legislative activities, therefore there is no case in the judicial records of this

State which may be cited in support of the validity of such attempted legislation.

I am of the opinion that the constitutional provision that the *"vote* on the *final passage* of every bill" shall be taken by yeas and nays and entered on the journal of each House applies in this case and was not observed; that it required the Senate vote on the Joint Conference Committee report to be taken by yeas and nays and spread in the journal, which was not done. See Norman v. Kentucky Board of Managers of World's Columbian Exposition, 93 Ky. 537, 20 S. W. Rep. 901, 18 L. R. A. 556; Cohen v. Kingsley, 5 Idaho 416, 49 Pac. Rep. 985, 38 L. R. A. 74; Allen v. City of Raleigh, 181 N. C. 453, 107 S. E. Rep. 463.

To sum up the conditions existing in the alleged passage of the bill: The House never voted upon the title of the Act as it is said to have passed; certain amendments adopted by the House when first considered were never considered by the Senate, nor indeed ever submitted to the Senate for consideration; the House never passed upon the amendments which were adopted by the Senate after the first report of the Joint Conference Committee; such amendments were not receded from by the Senate; the House adopted by a yea and nay vote the second committee report, but that action did not amount to a rescission of the amendments previously adopted; the Senate did not adopt the Committee report by a yea and nay vote and spread the same on the journal; the report of the Joint Conference Committee was a proposition to substantially and materially amend the bill as originally submitted to the Senate and amended and as originally adopted by the House with amendments. See Freeman v. Simms, 107 Fla. 438, 145 South. Rep. 187; State v. Skaley, 108 Fla. 506, 146 South. Rep. 544; State, *ex rel.* Bd. of Commrs., v. Helseth, 104

Fla. 208, 140 South. Rep. 655; Volusia County v. State, 98 Fla. 1166, 125 South. Rep. 375; Goff v. Rickerson, 61 Fla. 29, 54 South. Rep. 264.

I am therefore of the opinion that the Senate Bill No. 724, *supra,* the Act under consideration, did not pass the two Houses of the Legislature in the manner required by the Constitution for the exercise by the Legislature of the power of legislation and is therefore null and void.

In relation to the other cases listed in the caption of this opinion I agree with the very thoroughly presented and ably discussed views of Mr. Justice BUFORD as the same appear in dissenting opinion by him in the case of State, *ex rel.* Lane Drug Stores, Inc., a corporation, v. Clyde Simpson, as Tax Collector, filed November 26, 1935, on which date the majority opinion by Honorable Frank A. Smith, Judge of the Ninth Judicial Circuit, was filed.

BROWN, J.—I concur in all of the foregoing opinion except the last paragraph. I dissented in the case brought by the X-Cel Stores, Inc., without opinion, but for much the same reasons so well stated by Mr. Justice ELLIS, from which I was compelled to reach the conclusion that the bill in question had not passed the Legislature in the method commanded by the Constitution.