State, *ex rel.* Uly O. Thompson, v. Robt. W. Davis, as Secretary of the Senate of the State of Florida, Weldon G. Starry, as Chief Clerk of the House of Representatives of the State of Florida, and R. A. Gray, as Secretary of State of the State of Florida.

169 So. 199.
Opinion Filed June 9, 1936.

D. H. Redfearn, R. H. Ferrell, Thomas H. Anderson, H. H. Eyles, and E. F. P. Brigham, for Relator;

Cary D. Landis, Attorney General, H. E. Carter, Assistant Attorney General, Cockrell & Cockrell, Francis P. Fleming, E. J. L'Engle, L. R. Milton, P. H. Odom, Erskine W. Landis, Frank D. Upchurch, and Henry E. Williams, for Respondents.

### STATEMENT

The amended alternative writ of mandamus filed herein contains the following: "Whereas, * * * it was alleged that:

" 'On May 31st, 1935, the Senate and House of Representatives adopted Concurrent Resolution No. 30 of the 1935 Session of the Florida Legislature; that said Resolution appears on page 1498 of the 1935 House Journal and on page 1088 of the 1935 Senate Journal, and said Resolution provides that said respondents, the Chief Clerk of the House of Representatives and the Secretary of the Senate, are authorized and directed to correct and revise the respective Journals of the House and of the Senate for the last three days of the legislative session, to the end that the said Journals as finally incorporated into the bound volumes

may present a truthful and accurate account of the proceedings of the two Houses.

"Relator alleges that, by virtue of the legal duty imposed on the said Chief Clerk of the House and Secretary of the Senate, respondents herein, and by virtue of said Concurrent Resolution No. 30, it became and was and is now the duty of the said respondent Starry and the said respondent Davis, to comply with said Concurrent Resolution No. 30 and to correct and revise their respective Journals so as to present truthfully and accurately the proceedings of said Legislature; that said respondents have not truthfully and accurately kept said Journals, but, on the contrary, have included therein the false statements that the said Legislature adjourned at twelve o'clock noon in the daytime on May 31st, 1935; that said alleged Senate Bill No. 4, Chapter 17,085, General Laws of Florida, was engrossed, enrolled, and signed by the respective officers of the House and Senate and presented to and approved by the Governor on May 31st, 1935. Relator alleges that said enrolled bill was never legally signed for the reasons hereinafter set forth and, therefore, it became and was the duty of said respondents to expunge their respective signatures therefrom and to expunge from said Journals the false statement above mentioned. Nevertheless, each of said respondents, Starry and Davis respectively, have failed and refused and still fail and refuse so to do.

"Relator further alleges that, for the purpose of correcting and revising said respective Journals and said enrolled bill, it became and was the duty of the respondent, R. A. Gray, Secretary of State, to permit said respondents, Starry and Davis, to have access to and to deliver possession of said Journals and of said enrolled bill respectively, to said Starry and Davis, until said Journals and said enrolled bill

could be corrected and revised. Nevertheless, the said Secretary of State has failed and still fails so to do.

"The said purported Journals of the said Senate and said House of Representatives for May 31st, 1935, as so prepared and published by the said Davis and the said Starry as Secretary and Chief Clerk as aforesaid, are false and untrue in this:

"(1) The Legislature of the State of Florida did not adjourn *sine die* at twelve o'clock in the daytime on May 31st, 1935, but, on the contrary, the said Legislature of the State of Florida was adjourned *sine die,* by operation of law, at twelve o'clock midnight on May 31st, 1935, and was not thereafter reconvened or called into extra session as provided by law.

"(2) That said alleged Chapter 17085 was not, in fact, engrossed, enrolled, signed, presented, and approved, as it purports to be, on May 31st, 1935, but, on the contrary, the said alleged Act was not engrossed, was not enrolled, was not signed by the President of the Senate of the State of Florida and the said Secretary of the said Senate, was not signed by the Speaker of the House of Representatives of the State of Florida and was not signed by the said Chief Clerk of the House of Representatives of the State of Florida, and was not presented to the Governor before twelve o'clock midnight on May 31st, 1935, but the same was so signed and presented after nine o'clock A. M., on Saturday, June 1st, 1935.

"That Article 3, Section 2, of the Constitution of Florida requires all regular sessions of the Florida Legislature to commence on the first Tuesday after the first Monday in April of each odd numbered year, and that in accordance therewith the regular 1935 Session of the Florida Legislature duly and legally commenced on April 2nd, 1935, the

same being the first Tuesday after the first Monday in April, A. D. 1935; that said Article 3, Section 2, of the Constitution of Florida limits all regular sessions of the Legislature to sixty days, and that, accordingly, the regular 1935 Session of the Florida Legislature legally ended on May 31st, 1935.

"That Article 3, Section 17, of the Constitution of Florida requires that all bills passed by the Florida Legislature shall be signed by the presiding officer of the respective Houses and by the Secretary of the Senate, and by the Clerk of the House of Representatives, and that this provision of the Constitution as interpreted and defined by this Honorable Court requires such signatures to be affixed to any and all enrolled bills prior to the end of the legislative session.

"Relator alleges that the above provision, as so interpreted by this Court, made it mandatory for the Speaker and the Clerk of the House of Representatives, and the President and the Secretary of the Senate, to affix their respective signatures to the enrolled bill known as Senate Bill No. 4, Chapter 17085, of the General Laws of Florida for 1935, prior to the end of the last day of the 1935 Session of the Legislature, said last day being May 31st, A. D. 1935.

"Relator alleges that said enrolled bill known as Senate Bill No. 4, Chapter 17085, of the General Laws of Florida for 1935, was not signed by the above officers or any of them prior to the end of the 1935 regular session of the Legislature, and that said enrolled bill known as Senate Bill No. 4, Chapter 17085, of the General Laws of Florida, for 1935, was signed by all of the above named officials subsequent to nine o'clock A. M., Saturday, June 1st, A. D.

1935, and that, accordingly, said purported Act never became a law.

"By reason of the said failure of the said Davis and the said Starry, as Secretary and Chief Clerk respectively, accurately and truthfully to correct and revise said Journals, your petitioner is about to be ousted from his said office because the State of Florida, on the relation of its Attorney General, has obtained a writ of quo warranto against your petitioner in this court wherein it is charged that, because of the alleged passage of said Act, Chapter 17085, your petitioner's said office has been abolished, and said court in said action has held that your petitioner can not show in answer to said writ that the said purported Journals of said Houses for May 31st, 1935, are false and untrue, unless the same are corrected by appropriate proceedings.

"Relator further alleges that the action of said respondents, Robt. W. Davis as Secretary of the Florida Senate, 1935 Session of the Legislature, and Waldon G. Starry as Chief Clerk of the House of Representatives, 1935 Session of the Legislature, respectively, in refusing to comply with said Concurrent Resolution No. 30 to make said Senate and House Journals present a truthful and accurate account of the proceedings of the two Houses for the last three days of the Legislative Session of 1935 insofar as the same applies to said Senate Bill No. 4, and respectively to expunge from the respective House and Senate Journals of 1935 each and every statement that said Senate Bill No. 4, known as Chapter 17086, General Laws of Florida, 1935, was enrolled and presented to the Speaker, the Chief Clerk of the House of Representatives, the President, and the Secretary of the Senate, on May 31st, 1935, for their signatures; that said officers signed said bill on May 31st,

1935; that said bill was presented to the Governor on May 31st, 1935, for his approval on May 31st, 1935, and in refusing to correct said Journals and said enrolled bill so that the same speak the truth as to the true date that said bill was so signed, is in violation of their duty and is in violation and prejudicial to the private legal rights of your relator, and that said Senate Bill No. 4, known as Chapter 17085, General Laws of Florida, 1935, is invalid, unconstitutional, and of no effect, because the enrolling of the bill, the signing of the bill by the officers of the House and of the Senate, and the presentation thereof to the Governor, took place after said Florida Legislature for 1935, was *functus officio* (in accordance with Article III, Sections 2 and 28, Constitution of Florida), and without jurisdiction to take such legislative steps mandatorily required by Article III, Section 17, of the Constitution of Florida, in order to make said bill a valid law, and that your relator has no remedy save in the present application to this Honorable Court?"

"Now, THEREFORE, we, being willing that full and speedy justice shall be done in the premises, so command you, Robt. W. Davis, as Secretary of Florida Senate, 1935 Session of the Legislature, and Weldon G. Starry, as Chief Clerk of the House of Representatives, State of Florida, 1935, Session of the Legislature, to comply with said Senate and House Concurrent Resolution No. 30, to make said Senate and House Journals present a truthful and accurate account of the proceedings of the said House and Senate for the last three days of the Legislative Session for 1935, as far as the same applies to Senate Bill No. 4, Chapter 17085, General Laws of Florida, 1935, and that said Weldon G. Starry expunge from the House Journal the Statement that said Senate Bill No. 4, was duly signed by the Speaker

and Chief Clerk of the House of Representatives in open session and ordered referred to the chairman of the committee on enrolled bills on the part of the House of Representatives, to be conveyed to the Senate for the signatures of the President and the Secretary thereof, and that said Robt. W. Davis, as aforesaid, expunge from the Senate Journal the statements that said Senate Bill No. 4 was duly signed by the President and Secretary of the Senate in open session and ordered referred to the joint committee on enrolled bills on the part of the Senate, to be conveyed to the Governor for his approval on said day; and that said Weldon G. Starry, the Chief Clerk of said House, and Robt. W. Davis, Secretary of the Senate of the State of Florida, expunge from said House Journal and said Senate Journal respectively of May 31, 1935, all other matters and things which show that the said Senate Bill No. 4 was signed by said respective officers of the House and Senate and presented to the Governor on May 31, 1935, and that said respondents, Weldon G. Starry as aforesaid, and Robt. W. Davis as aforesaid, expunge from the enrolled bill the fact that said bill was signed by the said respondents, the President of the Senate and the Speaker of the House, and presented to the Governor for his approval on May 31st, 1935; and commanding R. A. Gray, as Secretary of State of the State of Florida, to permit said respondents, Waldon G. Starry and Robt. W. Davis, access to or to deliver possession of said House and Senate Journals and said enrolled bill, respectively, to the said Waldon G. Starry and Robt. W. Davis, so that the same can be corrected and revised as prayed, or that, in default thereof, you do appear before this Court at the court room on the 14th day of February, A. D. 1936, and show cause why you refuse so to do and have you then and there this Writ."

The Resolution referred to is as follows:

"HOUSE CONCURRENT RESOLUTION No. 30

"BE IT RESOLVED by the House of Representatives of the state of Florida, the Senate concurring:

"That the Chief Clerk of the House of Representatives and the Secretary of the Senate be, and they are hereby authorized and directed to correct and revise the respective Journals of the Senate and the House of Representatives for the last three days of the Legislative Session, to the end that the said Journals, as finally incorporated into the bound volumes, may present a truthful and accurate account of the proceedings of the two Houses; and be it further

"RESOLVED, by the House of Representatives, the Senate concurring, that the Chief Clerk of the House of Representatives and the Secretary of the Senate be, and they are hereby further authorized and directed to prepare and cause to be printed with the bound volumes of the Journals of their respective Houses an errata sheet which shall note any errors of form and substance in the said bound volumes covering the period of the entire session of 1935, and that said errata sheet, when so made, attached and printed in connection with the bound Journals shall be and become a part thereof as a record of the history and proceedings of the regular Session of the Legislature of 1935."

The respondents filed a motion to quash the amended alternative writ. Among the grounds of the motion are the following:

"27. It is not alleged that Senate Bill No. 4 was not in fact filed in the office of the Secretary of State, before twelve o'clock midnight on May 31st, 1935.

602

"28. The Governor of the State of Florida is a necessary party. * * *

"30. It affirmatively appears from the records in the office of the Secretary of State, of which the Court takes judicial notice, that Senate Bill No. 4, Acts of the Legislature of 1935, was deposited in the office of the Secretary of State on May 31st, 1935, and this fact is not denied by the alternative writ.

"31. The Legislature has the right to remain in session a reasonable time after the expiration of the sixty day period provided by the Constitution, in which to have all bills which were passed during the constitutional period enrolled and signed by the presiding officers of the respective Houses, and by the Secretary of the Senate and Clerk of the House of Representatives, and presented to the Governor."

Predicated on the motion to quash, counsel for the respondents state, with an omitted question, the following:

"*Question No. 2.* Is it sufficient for amended alternative writ to allege merely that Senate Bill No. 4 was not enrolled, signed by Legislative officials and presented to the Governor before 12 o'clock midnight on May 31st, 1935, when sixty day period for passing bills ended?

"*Question No. 3.* Is there any inconsistency between the Legislative Journals and the photostatic copy of enrolled bill that is attached to answer of Secretary of State, R. A. Gray, with respect to date of its passage?"

At the argument counsel exhibited a filed photostatic copy of the endorsements, signatures and dates appearing on the enrolled Senate Bill No. 4 on file in the office of the Secretary of State, the legal custodian of the enrolled bill, of which bill this Court takes judicial notice.

A copy of such endorsements follows:

"Senate Bill No. 4
"Passed the Senate this 24th day of May, A. D. 1935.
"Wm. C. Hodges
*"President of the Senate.*
"Robt. W. Davis
*"Secretary of the Senate.*
"Passed the House of Representatives this 30th day of May, A. D. 1935.
"W. B. Bishop.
*"Speaker of the House*
*of Representatives*
"Weldon G. Starry
*"Chief Clerk of the House*
*of Representatives*
"Examined and found correctly enrolled.
"F. P. Parker
*"Chairman of Committee*
*on Enrolled Bills*
"I certify that this Act originated in the Senate.
"Robt. W. Davis
*"Secretary of the Senate*
"Ida B. Stephens
*"Enrolling Secretary of*
*the Senate*
"Approved this 31st day of May, A. D. 1935.
"David Sholtz
*Governor*
"Filed in Office Secretary of State,
of the State of Florlda, This 31 Day
of May, A. D. 1935.
"R. A. Gray ·
*"Secretary of State.*
"By E. C."

Legislative rules, and not the Constitution, regulate the engrossing and the enrolling of legislative bills. See also Section 98 (82) C. G. L. Ordinarily the bill as introduced, or a substitute therefor, is used in actions taken thereon in each House, and appropriate endorsements are made on the bill. As amendments to the bill are adopted, they are engrossed and attached to the bill. After a bill has been passed by both Houses and all the amendments thereto proposed by either House have been duly adopted or rejected, the bill as introduced with the engrossed adopted amendments thereto is enrolled with the amendments incorporated therein. The enrolled bill is signed by the legislative officers. It is then presented to the Governor. If he approves it, he signs it and it is then filed in the office of the Secretary of State.

By Section 1 of Article III of the Constitution, the legislative authority of this State is vested in the Senate and House of Representatives as the Legislature of the State of Florida, and such legislative authority is required to be exercised during the periods of biennial regular sessions fixed by the Constitution, or during special sessions convened by Executive Proclamation.

"Regular sessions of the Legislature may extend to sixty days, but no special session convened by the Governor shall exceed twenty days." Sec. 2.

"Each House shall keep a Journal of its own proceedings, which shall be published." Sec. 12.

"Any bill may originate in either House of the Legislature, and after being passed in one House may be amended in the other." Sec. 14.

"Every bill shall be read by its sections on second reading and on its final passage * * *. The vote on the final

passage of every bill shall be taken by yeas and nays, to be entered on the Journal of each House." Sec. 17.

"The 'final passage' of a bill, within the meaning of the provisions of the Constitution of 1885 (Section 17, Article III) relating to the vote on the final passage of bills being taken by yeas and nays and entered upon the Journals of the Legislature, means the vote in each House which adopts the bill, after it has passed its first and second readings and after it has been read again for the purpose of being put upon its passage, and it is not required that a bill passed in one House and amended and passed in the other shall be read three times in the House originating the bill before it concurs in the amendments proposed by the other; nor is it required that the vote on the adoption of such amendments be taken by yeas and nays and entered on the Journal." State v. Dillon, 42 Fla. 95, 28 So. 781; State, ex rel. Lane Drug Stores, Inc., v. Simpson, 122 Fla. 670, 166 So. 262; State, ex rel. X-Cel Stores, v. Lee, 122 Fla. 685, 166 So. 568.

"All bills * * * passed" by the Legislature "shall be signed by the presiding officer of the respective Houses and by the Secretary of the Senate and the Clerk of the House of Representatives." Sec. 17.

All previous constitutions of the State contained provisions similar to the last quotation. Sec. 16, Art. IV, Constitution of 1838; Sec. 16, Art. IV, Constitution of 1861; Sec. 15, Art. IV, Constitution of 1865; Sec. 15, Art. IV, Constitution of 1868.

"Every bill that may have passed the Legislature shall, before becoming a law, be presented to the Governor; if he approves it, he shall sign it." Sec. 28, Art. III, Constitution of 1885.

The Legislative Journals show the due passage of Senate

Bill No. 4 by each House of the Legislature, and such due passage is not here questioned or denied. Senate Bill No. 4, passed the Senate by a recorded vote of 38 to 0 on May 24th, and passed the House by a vote of 75 to 3 on May 30th, 1935. The Legislative Journals also show that Senate Bill No. 4 was on May 31st, 1935, enrolled and signed by the legislative officers and then referred to the legislative committee to be presented to the Governor, and that the bill was presented to the Governor by the committee on May 31st, 1935; and the enrolled bill signed by the legislative officers shows it was approved by the Governor and filed in the office of the Secretary of State on May 31st, 1935. Senate Bill No. 4 has been officially published as Chapter 17085 of the laws of Florida.

As against the Executive record showing the approval of the bill by the Governor on May 31st, 1935, the amended alternative writ alleges:

"That said alleged Chapter 17085 was not in fact engrossed, enrolled, signed, presented, and approved, as it purports to be, on May 31st, 1936, but that on the contrary, the said alleged Act was not engrossed, was not enrolled, was not signed by the" legislative officers, "and was not presented to the Governor before twelve o'clock midnight on May 31st, 1935, but the same was so signed and presented after nine o'clock A. M. on Saturday, June 1st, 1935."

The Executive record of approval of the bill shows the enrolled bill on file in the office of the Secretary of State was approved by the Governor on May 31st, 1935. The entries in the legislative Journals are in accord with the executive record of the approval of Senate Bill No. 4, by the Governor, May 31st, 1935. The Executive record of the Governor's approval of the signed, enrolled bill on May 31st,

1935, shows the bill must have been signed and presented to the Governor on May 31st, 1935.

The allegations of the amended alternative writ that the bill was not enrolled and was not signed by the legislative officers "and was not presented to the Governor" until after May 31st, 1935, is contrary to the executive record showing the approval of the bill by the Governor on May 31st, 1935. The Governor is not a party to this action and there is no allegation of fraud or misconduct of any nature. See Amos v. Gunn, 84 Fla. 285, 345, 94 So. 615, 635.

The words, "signed by the legislative officers" as used in this statement and in the opinion herein, have reference to the President and Secretary of the Senate and the Speaker and Clerk of the House of Representatives, who are required by the Constitution to sign all bills passed by the Legislature. Sec. 17, Art. III. See also Sec. 6, Art. III, Constitution.

WHITFIELD, C. J.—This is a mandamus proceeding ancillary to a quo warranto action brought by the Attorney General of Florida to test the legal right of Hon. Uly O. Thompson to continue to exercise the power and duties of a Circuit Judge of the Eleventh Judicial Circuit of Florida, notwithstanding the enactment of Senate Bill No. 4, now published as Chapter 17085, Laws of Florida, 1935. See State, ex rel. Landis, v. Thompson, 120 Fla. 860, 163 So. 270; State, ex rel. Landis, v. Thompson, 121 Fla. 561, 164 So. 192. The original alternative writ of mandamus in this case was quashed with leave to amend. State, ex rel. Thompson, v. Davis, Secy. Senate, et al., 122 Fla. 425, 165 So. 379. Senate Bill No. 4, Chapter 17085, Acts of 1935, provides for re-circuiting the State of Florida into Judicial Circuits under Section 45 of Article V of the Constitution, adopted in 1934. The *due passage* by the Legislature of

Senate Bill No. 4, and its operation as Chapter 17085, Laws of Florida, 1956, have been adjudicated in State, *ex rel.* v. Thompson, 120 Fla. 860, 163 So. 270. See also State, *ex rel.* X-Cel Stores, Inc., v. Lee, 122 Fla. 685, 166 So. 568; State, *ex rel.* X-Cel Stores, Inc., v. Lee, 122 Fla. 670, 166 So. 262, text 263; State, *ex rel.,* v. Bird and Viney, 120 Fla. 780, 163 So. 248.

In this mandamus action it is sought to show that the legislative Journal entries made by the respondents Robert W. Davis, Secretary of the Senate, and Waldon G. Starry, Clerk of the House, purporting to record the proceedings of the last day of the regular legislative session of 1935, are not correct and truthful entries wherein such Journal entries purport to show that Senate Bill No. 4, Chapter 17085, Acts of 1935, was signed by the Legislative officers and was presented to the Governor on May 31st, 1935, the last day of the regular session; and to show that Senate Bill No. 4 was not signed by the legislative officers and was not presented to the Governor until after nine o'clock A. M., Saturday, June 1, 1935, which time was subsequent to the expiration of the sixty days during which the Legislature could be in regular session. The constitutional limitation of sixty days for a regular session of the Legislature expired at midnight or twelve o'clock P. M., Friday, May 31st, 1935.

Matters herein discussed were not adjudicated in quashing the original alternative writ. State, *ex rel.* Thompson, v. Davis, 122 Fla. 425, 165 So. 379.

It is contended that the Constitution requires all bills passed by the Legislature to be signed by the legislative officers *during* the sixty day regular session and also requires the bills so signed to be presented to the Governor *before* the expiration of the sixty days limited by the Con-

stitution for a regular session of the Legislature; and that *such signing and such presentation* to the Governor *during* the sixty days of a regular session are essential to the validity as a law of a duly enacted legislative bill; and that Senate Bill No. 4 was not enrolled and signed by the legislative officers and was not presented to the Governor· *during* the sixty day limitation of the regular session of the Legislature of 1935; Wherefore it is claimed that Senate Bill· No. 4 never became a valid law to terminate, by the repeal of a then existing law, relator Thompson's right to continue as Circuit Judge in the Eleventh Judicial Circuit.

In the amended alternative writ of mandamus herein it is in substance alleged that the relator was in 1930 duly appointed, confirmed and commissioned a Judge of the Circuit Court for the Eleventh Judicial Circuit of the State of Florida; "that he has since that time exercised the franchises, functions, jurisdictions and powers of said office * * * and that, although the term of the commission" expired June 6, 1935, "he is now holding over and acting in pursuance of a continuing constitutional commission, and, by reason thereof, is exercising the functions, franchises, jurisdictions and powers as Circuit Judge of the Eleventh Judicial Circuit of Florida, because his successor has not· been appointed by the Governor of the State of Florida and confirmed by the Senate of the State of Florida, as is provided by the Constitution and laws of the State of Florida."

In support of the claim of the relator herein that Senate Bill No. 4 never became a valid statute to repeal a prior law and thereby to terminate relator's right to continue in office, it is alleged in the amended alternative writ as copied in the statement, not that Senate Bill No. 4 was not duly passed by the Legislature before the end of the sixty day

period of the regular session, but that Senate Bill No. 4 was not enrolled, or signed by the Legislative officers, or presented to the Governor "before twelve o'clock midnight on May 31st, 1935, but the same was so signed and presented after nine o'clock A. M., on Saturday, June 1st, 1935." It is not specifically alleged that Senate Bill No. 4 was not approved by the Governor nor filed in the office of the Secretary of State, May 31st, 1935.

The allegations of the amended alternative writ in this case proceed upon the theory that the Constitution of this State requires all bills passed by the Legislature during a regular session of the Legislature, to be enrolled, signed by designated legislative officers, and presented to the Governor *before* the expiration of the expressly limited sixty day period of the regular session of the Legislature. It is not alleged that Senate Bill No. 4, the due passage of which by both Houses was completed on May 31st, 1935, was not signed by the legislative officers and presented to the Governor on that day *or* within a reasonable time thereafter, within the limitations stated in the case of State, *ex rel.* Cunningham, v. Davis, 123 Fla. 41, 166 So. 289, decided here February 25, 1936. The amended alternative writ was issued February 2, 1936, and was not further amended after the decision in the Cunningham case.

In support of the motion to quash the amended alternative writ it is argued by counsel for respondents that the writ should allege that Senate Bill No. 4 was not signed by the legislative officers and was not presented to the Governor *before* the expiration of the period of the legislative session *or* at any other time thereafter within the limitations stated in the Cunningham case, *supra.* This contention is well founded.

In State, *ex rel.* Landis, v. Thampson, 121 Fla. 561, 164

So. 192, it was in effect adjudicated that under the legislative authority conferred by Section 1, Article III, of the Constitution, upon the Senate and House of Representatives, a legislative bill could not have been legally introduced in, or amended or passed by, either House of the Legislature, after twelve o'clock midnight of May 31st, 1935, at which time the sixty day period of a regular session of the Legislature expired by virtue of the limitation contained in Section 2, Article III, of the Constitution, that "regular sessions of the Legislature may extend to sixty days.

Without in any way receding from or qualifying, but reiterating the adjudication in State, *ex rel. Landis,* v. Thompson, 121 Fla. 561, 164 So. 280, as stated above, under Sections 1 and 2, Article III, of the Constitution, this court in State, *ex rel.* Cunningham, v. Davis, 122 Fla. 700, 123 Fla. 41, 166 So. 289, 574, has in effect adjudged that the peremptory command of Section 17, Article III, of the Constitution, that every bill passed by the Legislature shall be signed by stated legislative officers, and that the absolute command of Section 28, Article III, of the Constitution, that every bill that may have been passed the Legislature shall, before becoming a law, be presented to the Governor, for his consideration, do not require the exercise of a *law-making discretion,* but the commanded duties are *absolute* and are intended to secure the authentication by the legislative officers and the due presentation to the Governor, of *all bills* passed by the Legislature, including *all* bills that may be passed shortly before the end of a legislative session as well as *all bills* passed earlier in the session, the Legislature having authority to pass bills at any time during the *entire* period of a session; therefore where bills are *duly passed by the Legislature during the fixed period of the session,* but such due passage is too near the last hour

of the session for the bills to be enrolled and signed by the legislative officers and presented to the Governor before the end of the session period, such mandatorily required signing by the legislative officers and presentation to the Governor, of such *duly passed* bills, may be done by the proper legislative officials in orderly and consecutive procedure even if the time needed to comply with the commanded absolute non-discretionary duties extends reasonably beyond the end of the session period, the commanded duties being absolute and applicable to *all* bills *duly passed* by the Legislature during the expressly limited period of the legislative session, and there being no express or necessarily implied limitation that such absolute duties shall be performed *during* the legislative session period.

This interpretation of Sections 17 and 28 of Article III of the Constitution, is not inconsistent with Section 2, Article III of the Constitution or with the adjudication in State, *ex rel.* Landis, v. Thompson, 121 Fla. 561, 164 So. 192. Such interpretation cannot and does not prolong the legislative session *after* the end of the period fixed by the Constitution. Nor does it authorize any law-making function to be performed *after* the end of the period of the legislative session as definitely fixed and limited by Section 2, Article III, of the Constitution. But such interpretation makes effective the intent of the absolute organic commands that *all* duly passed bills shall be signed by stated legislative officers and shall be presented to the Governor. Such mandatory organic requirements are designed to secure a definite official authentication of *all* bills that may be *duly passed* during the *entire* session period, and to insure the due presentation of *all* such duly passed bills to the Governor with promptness after the expressly required authentication.

A bill that is *duly passed by the Legislature* before the end of the session period cannot be reconsidered or amended after the expiration of the session period, for that would be the exercise of a discretionary law-making power after the end of the definitely limited session period. But a bill *so duly passed* will not become a law unless it is signed by the legislative officers and presented to the Governor within the reasonable limitations of time and procedure that are necessary to effectuate the intent of the organic command that *all* bills passed by the Legislature including bills duly passed near the end of the session period, shall be signed by designated legislative officers, and before becoming a law shall be presented to the Governor for his executive consideration.

Grounds of the motion to quash that are quoted in the statement, raise the question whether the allegations of the amended alternative writ are legally sufficient, as against the Executive record of the approval of the bill by the Governor on May 31st, 1935, to show that Senate Bill No. 4 was not signed by the legislative officers and was not presented to the Governor until after twelve o'clock midnight of May 31st, 1935. The *Executive record* of which the court takes judicial notice shows that Senate Bill No. 4 was approved and signed by the Governor and filed in the office of the Secretary of State on May 31, 1935; and such Executive record cannot be challenged in this case as it is made here.

As shown by the statement herein, the endorsements, signatures and dates upon Senate Bill No. 4, signed by the legislative officers and on file in the office of the Secretary of State, include the following:

"Approved this 31st day of May, A. D. 1935.

"David Sholtz, Governor.

"Filed in office of Secretary of State of the State of Florida this 31st day of May, A. D. 1935.

> "R. A. Gray, Secretary of State.
> By E. C."

In Amos v. Gunn, 84 Fla. 285, 94 So. 165, this Court said:

"An allegation in a bill of complaint attacking the validity of an Act of the Legislature that a certain document on file in the office of the Secretary of State purporting to be an official Act of the Legislature and purporting to be duly enrolled and signed by the presiding officers of the two Houses of the Legislature and their respective clerks and duly approved by the Governor, is not in fact an Act of the Legislature because it was never presented by that body to the Governor, nor signed by the presiding officers and clerks of the two Houses of the Legislature while that body was in session, is not susceptible of proof by parol evidence or other means *aliunde* the legislative journals or other public records in the office of the Governor or Secretary of State. And such allegation, standing alone, which does not also affirm the existence of a public record in the office of the Governor or Secretary of State which shows the alleged defects to exist is not admitted by demurrer to the bill of complaint.

"A document on file in the office of the Secretary of State, purporting to be an enrolled bill duly passed by the Legislature and duly signed by the presiding officers and clerks of the two Houses of the Legislature is *prima facie* a valid Act of the Legislature and may not be impeached by any evidence of less dignity than a public record of an official executive or legislative Act.

"A document on file in the office of the Secretary of State purporting to be an enrolled bill duly passed by the

Legislature and duly signed by the presiding officers and clerks of both Houses and duly approved by the Governor is a public record of an official act of the legislative and executive departments.

"The approval by the Governor of a bill purporting to have been duly passed by the Legislature and presented to him in conformity with the requirements of Section 28 of Article III of the Constitution, is equivalent to a certificate by the Governor that it came to his possession in due course. Such a document is a public record of a co-ordinate branch of the State Government and the judicial branch of the government has no power to adjudge it to have been made in a manner not in conformity with the rules and regulations of law, in the absence of a specific and unequivocal charge of fraud on the part of the officials concerned, or the existence of some public record of equal dignity to show the abuse of authority or violation of law by them." Amos v. Gunn, 84 Fla. 285, 94 So. 165.

"A demurrer does not admit allegations that are not well pleaded; among them being allegations of conclusions of law, allegations of conclusions of fact not sustained by facts alleged, allegations that are contradicted by the record in the case or by other records or matters of which the court takes judicial notice, and allegations that the law does not permit to be proven." Martin v. Dade Muck Land Co., 95 Fla. 530, 116 So. 449.

The motion to quash has the effect of a demurrer to the amended alternative writ.

The Governor is not a party to this action and the Executive record made by the Governor's approval on May 31st, 1935, of Senate Bill No. 4, on file in the office of the Secretary of State, of which Executive record the court takes judicial notice, refutes the allegation of the amended.

alternative writ that Senate Bill No. 4 was not presented to the Governor before twelve o'clock midnight on May 31st, 1935. The enrolled bill that is signed by the legislative officers could not have been approved by the Governor on May 31st, 1935, and filed in the office of the Secretary of State on May 31st, 1935, unless it had previously been duly signed and presented to the Governor. Amos v. Gunn, 84 Fla. 285, 94 So. 165.

It thus appears that the allegations of the amended alternative writ are not legally sufficient to show that Senate Bill No. 4, was not signed by the legislative officers and was not presented to the Governor until after twelve o'clock midnight of May 31st, 1935. The Executive record of the Governor's approval of Senate Bill No. 4 and of its filing in the office of the Secretary of State on May 31st, 1935, imports verity and is sufficient, as against the allegations of the amended alternative writ, to show that Senate Bill No. 4 was signed by the legislative officers and was presented to the Governor on May 31, 1935.

The alternative writ alleges that Senate Bill No. 4 was not signed by the legislative officers and was not presented to the Governor until after twelve o'clock midnight of May 31st, 1935. But the Executive record of the approval of Senate Bill No. 4 by the Governor, and of its filing in the office of the Secretary of State on May 31st, 1935, is not duly challenged here, since the Governor is not a party and no wrongdoing is suggested. Such Executive record sustains the Journal entries made by the respondents Davis and Starry, which entries state that Senate Bill No. 4 was enrolled and was signed by the legislative officers and was ordered to be presented to, and was presented to, the Governor all on May 31st, 1935. Such Executive record of approval of the bill is endorsed on Senate Bill No. 4 as it

is enrolled and signed by the legislative officers, thereby showing that the bill was so enrolled and signed and presented to the Governor before he approved and signed the bill, May 31st, 1935, and had it filed in the office of the Secretary of State, May 31st, 1935.

The endorsement on the enrolled bill signed by the President and Secretary of the Senate that Senate Bill No. 4 "passed the Senate *this* 24th day of May, 1935," has reference to the passage of the bill by the Senate by a recorded yea and nay vote of 38 to 0 on the third reading of the bill, May 24, 1935; not to the date on which the House amendments to the bill were concurred in by the Senate or to the date on which the bill was enrolled or when it was signed by such legislative officers. The word "this" is superfluous and may be disregarded. The endorsements by the Senate legislative officers on the enrolled bill, that the bill was passed by the Senate, May 24th, 1935, do not purport to show, even if they could legally show, that the bill was or was not amended by the House after it passed the Senate. The endorsements of the Senate legislative officers on the enrolled bill as to the date of the passage of the bill do not purport to contradict, and are not inconsistent with, the Journal entries showing amendments by the House to the bill after its passage by the Senate on May 24th, 1935. Amendments may be made to a bill after it has passed either House of the Legislature. Section 14, Article III, Constitution. State v. Dillon, 42 Fla. 95, 28 So. 781. The House Jorunal shows that Senate Bill No. 4 was passed by the House by a yea and nay vote of 75 to 3 on May 30th, 1935, which accords with the endorsements of the Speaker and Clerk of the House on the enrolled bill.

The Journals state that the legislative bodies severally adjourned *sine die* at noon on May 31st, 1935; but as the

618

Legislature could legally have remained in session until twelve o'clock midnight May 31st, 1935, the Journal entries stating that each House of the Legislature adjourned *sine die* at twelve o'clock noon on May 31st, 1935, cannot invalidate Senate Bill No. 4, since it appears by the enrolled Senate Bill No. 4, that it was signed by the legislative officers and that it was approved by the Governor May 31st, 1935, and that it was filed in the office of the Secretary of State, May 31st, 1935, the legislative Journals showing without question that Senate Bill No. 4 was duly passed by both Houses of the Legislature.

Senate Bill No. 4, Chapter 17085, Acts of 1935, having been duly passed by each House of the Legislature, as shown by the legislative Journals not here questioned, and the enrolled bill signed by the legislative officers having been approved by the Governor, May 31st, 1935, as shown by the Executive record, it must be concluded on this record that Senate Bill No. 4 was signed by the legislative officers and presented to the Governor before he approved it. This being so, the bill became a valid enactment upon its approval by the Governor. It repealed the statute under which the relator here, Hon. Uly O. Thompson, claims to hold his office as Circuit Judge. State, *ex rel.*, v. Bird and Viney, 120 Fla. 780, 163 So. 248. The relator therefore is not shown to have a justiciable interest in the correctness of the legislative Journals here involved. State, *ex rel.* Thompson, v. Davis, 122 Fla. 425, 165 So. 379.

In Amos v. Gunn, 84 Fla. 285, 94 So. 165, it is alleged: "that the said alleged statute * * * was never signed in the respective Houses by the Speaker of the House of Representatives and the Clerk thereof and by the President of the Senate, and the Secretary thereof, or by any of them"; that the regular session of the Legislature for the year 1921

was adjourned *sine die* on the 3rd day of June, A. D. 1921; that "complainant is informed and believes and so alleges that after said Legislature had adjourned as aforesaid, that on Saturday, the 4th day of June, A. D. 1921" the Chief Clerk of said House of Representatives "found in his desk what appeared to be an engrossed bill"; "that said bill had not been enrolled, and was not signed by the Speaker or presiding officer of the House of Representatives, and was not signed by the President or presiding officer of the Senate, or the Secretary of the Senate;" that the Clerk of the House of Representatives "had said engrossed bill copied by someone in the form in which bills are usually enrolled in the Legislature."

It is also alleged that such bill was signed by the President and Secretary of the Senate and by the Speaker and Clerk of the House of Representatives after the Legislature had adjourned *sine die* on June 3rd, 1921. It is also alleged that after the enrolled bill was signed, the Chief Clerk of the House of Representatives "then took the same to the Governor."

The enrolled bill in the Amos-Gunn case showed it was approved by the Governor June 10, 1921. The bill of complaint prayed that the enforcement of the statute be enjoined on the ground that it was not a valid law. A general demurrer of the bill of complaint was overruled. On appeal this court reversed the order overruling the demurrer.

The opinion of the court contains the following: "The Governor has no power to approve a document as a bill which has passed the Legislature, unless it has been presented to him by that body with the signatures thereon of the presiding officers and clerks of the two Houses, yet he approved this bill and transmitted it to the Secretary of

State. It follows, therefore, that his signature attached to such bill in approval is equivalent to a certificate by him under oath that it reached his hand in due course. It is, therefore, a public record of a co-ordinate branch of the state government, and the judicial branch has no power to adjudge it to have been made in a manner not in conformity with the rules and regulations of law in the absence of a specific and unequivocal charge of fraud on the part of the officials concerned, or the existence of some public record of equal dignity to show the abuse of authority or violation of law by them or the forgery of their signatures."

"The power of the Governor to certify to the approval of a law enacted by the Legislature and presented to him for consideration, is one of the trusts of the Constitution. That he has done so in this case the record shows. And unless it appears by an executive record of equal dignity that his approval was an error or mistake the law must stand so far as the first attack made upon it is concerned.

"The signature of the Governor to the bill is the record of an executive act in which the executive acted in a legislative capacity, says this court in State v. Deal, 24 Fla. 293, 4 South. Rep. 899, and Advisory Opinion, 23 Fla. 297, 6 South. Rep. 925. That record insofar as it relates to the Governor's power or authority to make it, is *prima facie* valid and imports verity and is unimpeachable except by an executive record of equal dignity. In announcing this doctrine we apply by analogy the Journal Entry rule, that is to say, as an enrolled bill in the Secretary of State's office, being the record of an official act of the Legislature, may be impeached only by the legislative Journals, so the record of the executive official act may be impeached only by the legislative Journals, so the record of the executive

official act may be impeached only by an executive record of equal dignity."

In the Amos-Gunn case there was no attempt to directly impeach the legislative or the executive record as to the signing, presentation and executive approval of the Act. The Act in that case was approved by the Governor June 10, 1921. The Legislature adjourned June 3, 1921.

In this case the legislative record of the signing and of the presentation to the Governor of the bill is challenged, but the executive record of the approval of the bill by the Governor is not challenged. The executive record shows that the enrolled bill was approved by the Governor and filed in the office of the Secretary of State on May 31, 1935. The sixty day period for a regular session of the Legislature of 1935 expired at midnight, May 31, 1935.

In State, *ex rel.* Cunningham, v. Davis, et al., 123 Fla. 41, 166 So. 289, in a direct proceeding impeaching the legislative Journals in stated particulars, this court adjudged that the "Implied powers of the Legislature are as potent as expressly conferred powers. The express declaration of the power of the Legislature to cause any regular session to 'extend to sixty days' in accordance with Section 2 of Article III of the Constitution, *ex necessitate* implies its right to exercise its prerogative lawmaking functions as a Legislature up until the very moment of its constitutional prerogation. This in turn implies that under Sections 12, 17 and 28 of Article III of the Constitution, the 1935 Legislature was entitled to remain in session on June 1, 1935, undissolved as a parliamentary body adjourned *sine die,* when it found such holding over and continuation of its sittings to be indispensable to enable it to comply with the express commands of Section 12, 17 and 28 of Article III as to Acts it had already constitutionally passed, but which had not

been duly authenticated as such and presented to the Governor, during the sixty days' period prescribed by Section 2 of Article III."

This case directly challenges particular entries in the Legislative Journals for May 31, 1935, the last day of the regular session of the Legislature in 1935. It is alleged in the amended alternative writ of mandamus:

That the "respondents have * * * included" in the Journal entries "the false statements that * * * said alleged Senate Bill No. 4 was * * * enrolled and signed by the respective officers of the House and Senate and presented to and approved by the Governor on May 31st, 1935. * * * "That said alleged Chapter 17085 was not, in fact, engrossed, enrolled, signed, presented, and approved, as it purports to be, on May 31st, 1935, but, on the contrary, the said alleged Act was not engrossed, was not enrolled, was not signed by the President of the Senate of the State of Florida and the said Secretary of the said Senate, was not signed by the Speaker of the House of Representatives of the State of Florida and was not signed by the said Chief Clerk of the House of Representatives of the State of Florida, and was not presented to the Governor before twelve o'clock midnight on May 31st, 1935, but the same was so signed and presented after nine o'clock A. M., on Saturday, June 1st, 1935."

In the last above quoted paragraph it is alleged that the Act was not "approved as it purports to be, on May 31, 1935"; but. the word "approved" is not included in the subsequent allegations in the same sentence and paragraph.

The approval of the bill by the Governor before the expiration of the sixty day limitation of the legislative session, was not essential to the validity of the Act, because the Act would become a law if the Governor did not veto it

within ten days after the final adjournment of the Legislature. Section 28, Article III, Constitution. But in this case the executive record of the approval of the bill by the Governor on May 31st, 1935, is sufficient to withstand the allegation that the bill was not enrolled, signed or presented to the Governor before midnight of May 31, 1935, "but the same was so signed and presented after nine o'clock A. M., on Saturday, June 1st, 1935."

Similar allegations in Amos v. Gunn were overcome by an executive record showing the bill in that case was approved by the Governor on June 10, 1921, seven days after the expiration of the sixty days' session and the final adjournment of the Legislature on June 3, 1921.

The enrolled bill signed by the President and Secretary of the Senate and by the Speaker and Clerk of the House of Representatives, shows it was approved by the Governor May 31, 1935; and that executive record is not duly challenged here. If the enrolled bill was approved and signed by the Governor May 31, 1935, it must have been duly signed and presented to the Governor prior to his official approval of the bill on May 31, 1935, when the Legislature could have been in regular session. In the Amos-Gunn case the Legislature adjourned *sine die* on June 3rd, 1921, and the litigated Act was approved by the Governor June 10, 1921. In this case the session term ended at midnight May 31, 1935, and the challenged Act was approved on May 31, 1935, as shown by the enrolled bill, and the executive record of approval is not challenged here. As the executive record of the approval of the bill by the Governor on May 31, 1935, is not impeached, the allegation that the bill was signed and presented to the Governor after nine o'clock A. M., on Saturday, June 1, 1935, is insufficient

and the alternative writ should be quashed with leave to amend.

It is so ordered.

TERRELL, BUFORD, and DAVIS, J. J., concur.

ELLIS, P. J., and BROWN, J., dissent.

ELLIS, P. J. (dissenting).—The majority opinion rests upon two independent hypotheses, either one of which if true is sufficient to support the conclusion reached. One of those hypotheses definitely repudiates the law as announced in the case of Amos v. Gunn, 84 Fla. 285, 94 South. Rep. 615, and reaffirmed in the case of State, *ex rel.* Cunningham, v. Davis, 123 Fla. 41, 166 South. Rep. 289. In the other the law as announced in the Gunn case, *supra,* is definitely adopted and affirmed.

The first hypothesis is that a bill passed by the Legislature may be enrolled and "signed by stated Legislative officers" and "presented to the Governor" after the constitutional legislative session has expired by limitation of time, if such enrolling, signing and presentation to the Governor are done within *reasonable* time "beyond the end of the session period."

In the Gunn case, *supra,* it was held first, that the constitutional provision requiring presiding officers and clerks of each House of the Legislature to sign all bills is mandatory; second, that such signing of bills "must be done in open session of the House over which the officer signing is then presiding and to which the clerk signing is attached"; third, that no bill passed by the Legislature can become a law until it has been presented by the Legislature to the Governor; fourth, that such presentation *can* be made by the Legislature *only* while in session.

In the Cunningham case, *supra,* this Court said, referring to the Gunn case, *supra,* "To that opinion we still adhere,

and so holding, we here and now approve and reaffirm the principles of law that were therein set forth in the opinion of Mr. Justice ELLIS as the views of a majority of this court in the premises." That statement was made after setting forth the principles referred to above in the language which was used in the Gunn case. In the Gunn case Mr. Justice WHITFIELD and Mr. Justice WEST were of the opinion that the "Constitution does not require duly passed bills to be signed by the legislative officers in open session or before final adjournment, and does not make such signing in open session a prerequisite to the effectiveness of the Act and does not require such bills to be presented to the Governor before adjournment" (See Gunn case, 84 Fla. text 382). Mr. Chief Justice BROWN, Mr. Justice TAYLOR and the writer of this opinion agreed that the bills duly passed ·by the Legislature were required by the Constitution to be signed by the proper officers of the legislative session in open session and presented to the Governor only while in session.

The Cunningham case restated and reaffirmed that doctrine.

I believe that the reason advanced in support of those views has never been answered and indeed cannot be where all provisions of the Constitution as to lawmaking power are considered.

The term *"law-making discretion"* as used in the majority opinion has no application whatsoever under our system of government insofar as the term is sought to be applied to the *modus operandi* in exercising legislative power. The law-making power is absolutely controlled by the express words of the Constitution. In the act of "making" a law, in the physical sense of formulating the proposition and preparing it for presentation to the Governor

after it has been voted on and adopted or passed by the Legislature, there is no discretion whatsoever in the Legislature because the Constitution prescribes how that shall be done. Such was the holding in the cases of Amos v. Gunn, *supra,* and State, *ex rel.* Cunningham, v. Davis, *supra.*

If the term *"law-making discretion"* applies to the wisdom or policy of the Legislature in enacting the measure as one for the welfare of the State in the exercise of legislative power, the term has no application whatsover as the policy, wisdom or reasonableness of the Act is in nowise involved in this litigation, therefore to use the term in that sense in this case can only produce confusion of thought, distraction, embarrassment in the mental processes.

The term *"discretion"* as applied to legislative activities is appropriate only when legislative power is constitutionally exercised for the public welfare. As to the mental activity of the Legislature in formulating and enacting a measure, the term "discretion" has been applied. What is good and wise is for legislative judgment. In that matter only has this Court spoken of legislative discretion. See Davis v. Florida Power Co., 64 Fla. 246, 60 South. Rep. 759, Ann. Cas. 1914 B. 965; Everglades Sugar & Land Co. v. Bryan, 81 Fla. 75, 87 South. Rep. 68; Co. Com. Hillsborough Co. v. Savage, 63 Fla. 337, 58 South. Rep. 835.

The term *"law-making discretion"* has no place in the terminology of law-making activities as the same relate to the ministerial or mechanical processes by which the legislative will may be expressed in duly enacted statutes. To use the term is to introduce a misleading and confusing thought relating to legislative power in contravention of the express letter of the Constitution. It is to exact legislative power in violation of the "organic" law, to subordinate the Constitution to the legislative convenience, to

paralyze the Constitution in its inhibitions against disorderly, capricious or desultory law-making activities by eliminating well chosen words directing how and in what manner the enormous power of enacting laws may be exercised by "legislative authority," it amounts to judicial amendment of the Constitution, to setting at naught the will of the people, as expressed in that document called their "organic law."

The term "absolute" duties as used in the majority opinion is likewise misused as intending to convey the idea that "legislative officers" are required to authenticate measures voted upon affirmatively by the Legislature. There is no such term as "legislative officers" used in the Constitution. The Speaker of the House and the Clerk, the President of the Senate and Secretary are merely parliamentary agents of the numerous members of the Legislature, each and every one of whom is a "legislative officer" in the sense that their duties relate to the enactment of laws. See State v. Kelly, 103 Mo. App. 711, 77 So. W. Rep. 996; O'Grady v. Polk, 116 N. Y. Supp. 290, 132 App. Div. 47; Braithwaite v. Cameron, 3 Okla. 630, 38 Pac. Rep. 1084.

The President of the Senate and Speaker of the House are merely "presiding officers" of the deliberative body which at each regular session of the two Houses are required to choose from among its own members. Sec. 6, Art. III, Const. 1885.

The designation by the Constitution of the President of the Senate and in case of his death or inability to act, the Speaker of the House as persons upon whom in a given situation the powers and duties of Governor shall devolve, Sec. 19, Art. IV, Const., confers no official powers upon them as "legislative officers" in addition to their powers as members of the Legislature. There are merely two mem-

bers of the Legislature upon whom the powers of Governor shall devolve in certain circumstances. No such provision exists as to the Secretary of the Senate or Clerk of the House of Representatives, yet their signatures are as essential to the bill as passed as the signature of the presiding officers. Sec. 17, Art. III, Const. The secretarial employees of the two Houses cannot be said to be "legislative officers." They are merely parliamentary agents or clerks of the Legislature, who perform their duties while the session of the Legislature, their principal, is in existence. Their duties as such agents cease when the session ends. To hold that they have any official capacity as "legislative officers" is to ignore the meaning of words and create a governmental functionary from the substance of which sleeping visions are made; certainly not from any material existing in the Constitution.

The use of those terms *"law-making discretion"* and absolute duties" introduces into the concept of legislative power two elements which, as applied to the method of preparing a proposition or bill to be considered and voted upon and after its passage for authentication and submission to the Governor, have no place in the constitutional power of bringing a proposition submitted to the Legislature into fruition as a lawfully enacted statute.

. No discretion exists in the manner prescribed by the Constitution as to how a bill shall be read; none exists as to how the final vote shall be taken. Neither does any discretion exist as to how and by whom and when the bill as passed shall be .signed and presented to the Governor. Those are duties about which there can be no discretion if the Constitution is to be observed. The signing of a bill by certain agents of the deliberative body is as certainly and

definitely required as any other legislative duty imposed by the Constitution.

The majority opinion seems to concede that bills "duly passed," that is to say within the period of sixty day session, must be presented by the presiding officers of the two Houses and the Secretary and Clerk thereof to the Governor "within the reasonable limitations of time and procedure that are necessary to effectuate the intent of the organic command that *all* bills passed by the Legislature" shall be presented to the Governor.

What are the "reasonable limitations of time and procedure"? One looks in vain to the Constitution for any standard by which the time or the procedure may be determined to be reasonable if the bills so duly passed may be presented after the expiration of the constitutional limitations of time and procedure in which it may be done. So the conclusion is forced upon the majority that the court must determine from evidence outside the Legislative Journals just what "time and procedure" are necessary in every case when the question is presented. There is no requirement in constitutional provisions that a bill "duly passed" shall be immediately signed by the presiding officers and clerks and presented to the Governor for his approval or disapproval. May the presiding officers therefore postpone the time for signing them and the observance of such other "procedure," which the opinion vaguely mentions, until after the expiration of the sixty day period during which the Legislature may be constitutionally in regular session and thus in the circumstances defer the observance of such procedure and the signing and presentation of the bills so passed for ten days or more, and thus set aside another constitutional requirement that the Governor shall have five days after presentation to him in which to return it, if he

desires, with his objections to the House in which it originated?

Will another provision thus be set aside which allows the Governor ten days after adjournment of the Legislature to veto a bill passed, otherwise it shall be a law? Section 28, Art. III, Const., 1885.

I am of the opinion that the first hypothesis upon which the majority opinion rests is unsound and cannot be logically sustained under the Constitution.

The second hypothesis on which the opinion rests is that the allegations of the alternative writ are "legally insufficient as against the Executive record of the approval of the bill by the Governor on May 31st, 1935," to show that the bill was not signed by "legislative officers and was not presented to the Governor until after twelve o'clock midnight of May 31st, 1935."

It is difficult to perceive why that point should be mentioned at all in view of the conclusion at which the majority had already arrived; that the signing of the bill and its presentation to the Governor was not necessary to be done within the constitutional period of sixty days during which the Legislature could be legally in session but that such signing and presentation could be legally done within a reasonable time thereafter.

The allegations of the writ are sufficient to definitely and clearly present the point. It definitely alleges that the bill, Chapter 17085, Laws 1935, was not engrossed, enrolled, signed, presented and approved on May 31, 1936, but on the contrary that it was not done before twelve o'clock midnight on May 31, 1935, or at any time prior thereto. Surely if it was not done prior thereto and was done at all it must have been done after that date.

This mandamus proceeding was begun to compel Davis as Secretary of the Senate and Starry as Clerk of the House to correct the Journal entries of May 31, 1935, so as to speak the truth in conformity to the duty with which they were charged specifically by concurrent resolution. The motion to quash the writ admitted its allegations well pleaded.

In the case of State, *ex rel* Landis, v. Thompson, 121 Fla. 61, 164 South. Rep. 192, this Court held that the court may inquire into the question on direct attack. The court also held that recitals of legislative action which did not occur before the legislative *session* became *functus officio* (*false entries*) may be expunged; that where the Legislature had exceeded its *"jurisdiction* as Legislature" by continuing in session beyond its *"allotted* constitutional number of 60 days" the conclusive legal presumption that ordinarily attaches to legislative records does not attach, Const., Art. III, Sec 2; that the court has authority when private legal rights are shown to be prejudiced by unauthorized acts of "legislative officials" to judicially coerce clerical officers of the Legislature to stay within bounds of delegated authority in making up what purports to be legislative records. State v. Thompson, *supra.*

The pleadings in this case having established the fact that certain recitals of legislative action in what purported to be the legislative Journal of May 31, 1935, did not occur before the legislative session became *functus officio* and that such entries were false, this Court has or has not the authority to coerce the legislative clerks to make the corrections necessary to a truthful recital of the transactions.

The Thompson case, *supra,* held that the Court has such authority, and in the Cunningham case, *supra,* this Court held, as does the majority opinion in this case, that the so-called "legislative officers," meaning thereby the presiding

officers of the two Houses and their Clerks, have not only the power but it is their duty to remain at the capital after the sixty day regular session of the Legislature has expired by constitutional limitation of time to complete their "absolute duties," meaning thereby the enrollment, signing and presentation of the "duly passed" bills to the Governor. If that is true then such "legislative officers," the clerks, have not only the authority but it is their duty to make correct recital of the transactions occurring after the Legislative session has become *functus officio* by expiration of the sixty day limit. Then, if they have such authority, the entries become, when correctly made and not falsely made, a legislative record. So it follows that the case of Amos v. Gunn, heretofore cited to another point, has no bearing whatsoever upon this point.

I think the case of Amos v. Gunn, *supra,* is authority for both propositions of law, viz.: first, that a bill duly passed by the Legislature must be signed by the proper officers of the Legislature in open session and by the Legislature through its authentic agencies during the session presented to the Governor. That point was *precisely* determined; second, that a legislative and executive public record is made in due course of official action without fraud or deception. Such record may not be successfully attacked in the absence of another public record of equal dignity contrary thereto. Believing such to be the law of the land, I am necessarily of the opinion that the motion to quash the alternative writ should be overruled.

BROWN, J., concurs.